Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/05/2025 09:08 AM CDT

**State of Nebraska, appellee, v.
John L. Parks, Sr., appellant.**

___ N.W.3d ___

Filed September 5, 2025.    No. S-24-235.

1. **Constitutional Law: Speedy Trial: Appeal and Error.** The standard of review appellate courts apply for constitutional speedy trial claims mirrors the standard of review appellate courts apply in statutory speedy trial cases: Factual determinations relevant to the claim are reviewed for clear error while legal determinations are reviewed de novo.

2. **Judgments: Appeal and Error.** Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

3. **Criminal Law: Pretrial Procedure: Appeal and Error.** Discovery in a criminal case is generally controlled by either a statute or court rule. Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial is within the trial court's discretion and will not be disturbed on appeal in the absence of an abuse of discretion.

6. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

7. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

8. **Speedy Trial: Statutes.** The statutory right to a speedy trial is set forth in Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 2016).

9. **Speedy Trial.** If a defendant is not brought to trial by the 6-month speedy trial deadline, as extended by any excluded periods, he or she is entitled to absolute discharge from the offense charged and for any other offense required by law to be joined with that offense.

10. **Speedy Trial: Appeal and Error.** An appeal from the denial of a motion for discharge under the speedy trial statutes presents a relatively simple mathematical computation of whether the 6-month speedy trial clock, as extended by statutorily excludable periods, has expired before the commencement of trial and does not require any showing of prejudice.

11. **Speedy Trial.** To calculate the time for speedy trial purposes, a court must exclude the day the information was filed, count forward 6 months, back up 1 day, and then add any time excluded under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) to determine the last day the defendant can be tried.

12. **Actions: Appeal and Error.** The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage.

13. **Appeal and Error.** Under the law-of-the-case doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.

14. **Speedy Trial: Waiver: Motions for Continuance.** A defendant permanently waives his or her statutory speedy trial rights under Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016) when an ultimately unsuccessful motion for discharge results in the continuance of a timely trial to a date outside the statutory 6-month period, as calculated on the date the motion for discharge was filed.

15. **Speedy Trial: Waiver.** Once a defendant has waived his or her statutory right to a speedy trial, an exact calculation of days remaining on the speedy trial clock is no longer required.

16. **Constitutional Law: Speedy Trial.** The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11.

17. **Speedy Trial: Words and Phrases.** A speedy trial, generally, is one conducted according to prevailing rules and proceedings of law, free from arbitrary, vexatious, and oppressive delay.

18. **Constitutional Law: Speedy Trial.** Determining whether a defendant's constitutional right to a speedy trial has been violated requires application of a balancing test that involves consideration of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant.

19. **Constitutional Law: Speedy Trial: Presumptions.** A delay of a year or more is the benchmark commonly recognized as presumptively prejudicial in a constitutional speedy trial analysis.

20. **Speedy Trial: Verdicts: Sentences.** The more complex and serious the crime, the longer a delay might be tolerated, because society also has an interest in ensuring that longer sentences are rendered upon the most exact verdicts possible.

21. **Trial: Records: Evidence: Appeal and Error.** The transcript of the orders or judgment entered is the sole, conclusive, and unimpeachable evidence of the proceedings in the district court, and the correctness of the record may not be assailed collaterally in an appellate court.

22. **Trial: Evidence: Attorneys at Law.** Oral argument at the trial level is not evidence.

23. **Constitutional Law: Speedy Trial.** A showing of actual prejudice to a defendant alleging violation of constitutional speedy trial rights is required if the government exercised reasonable diligence in pursuing the defendant.

24. **Criminal Law: Constitutional Law: Due Process.** Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

25. **Pretrial Procedure.** A defendant does not have an unfettered right to discovery.

26. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

27. **Motions for Mistrial: Proof: Appeal and Error.** To prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

28. **Verdicts: Juries: Jury Instructions: Presumptions.** Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.

29. **Evidence: Words and Phrases.** To be relevant, evidence must be probative and material. Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence. A fact is material if it is of consequence to the determination of the case.

30. **Rules of Evidence.** The fact that evidence is prejudicial is not enough to require exclusion under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party; it is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under rule 403.

31. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

32. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the issue.

33. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

34. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

35. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

36. **Effectiveness of Counsel: Words and Phrases.** A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Affirmed.

Keith Dornan and Stuart J. Dornan, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Funke, C.J.

## I. INTRODUCTION

In this direct appeal, John L. Parks, Sr., challenges his convictions in the district court for Douglas County, Nebraska, of two counts of first degree murder and five other felony offenses. Parks primarily argues that his speedy trial rights were violated. In so arguing, Parks claims that under the circumstances of this case, the delays that resulted from motions to continue and to depose witnesses filed by his counsel should not be attributed to him. We disagree, and we find Parks' other arguments to be without merit. Accordingly, we affirm Parks' convictions.

## II. BACKGROUND

Michael Harbour and Nicole Hatten were shot and killed in the parking lot of a hotel in Omaha, Nebraska, at approximately 7:34 a.m. on July 30, 2020. Parks can be seen on surveillance videos exiting the hotel together with Harbour, Hatten, and another person, Evelyn Lee, shortly before the shootings. A subsequent search of Parks' hotel room found a firearm and approximately 81 grams of cocaine.

On May 7, 2021, an information was filed charging Parks with two counts of first degree murder, two counts of use of a firearm to commit a felony, two counts of possession of a firearm by a prohibited person, and one count of possession with intent to deliver cocaine in relation to the deaths of Harbour and Hatten. The information was later amended to add a habitual criminal allegation.

The public defender's office was appointed to represent Parks. We refer to Parks' public defender as his appointed counsel to distinguish her from the counsel Parks subsequently retained. Represented by his appointed counsel, Parks waived his right to physically appear for arraignment and entered a written plea of not guilty.

### 1. Initial Pretrial Motions

On May 10, 2021, Parks' appointed counsel filed a motion for statutory discovery. That motion was granted on May 11.

Thereafter, Parks' appointed counsel apparently made four oral motions to continue the pretrial conference:

• from June 25 until August 13, 2021;
• from August 13 until September 27, 2021 (the date was later changed to September 23, 2021, on the court's motion);
• from September 23 until November 5, 2021; and
• from November 5 until November 29, 2021.

No verbatim record was made of these proceedings. However, in each instance, the district court issued an order stating Parks' appointed counsel "confirm[ed]" that she had advised Parks the continuance would toll the speedy trial clock and that Parks understood and consented to this tolling. Upon those premises, the court granted the continuances and found that the motions tolled Parks' speedy trial rights under Neb. Rev. Stat. § 29-1207(b)(4) (Reissue 2016). Two of the orders also stated that Parks was present personally when his appointed counsel moved to continue the pretrial conference. However, Parks subsequently argued that he had not actually been present, as described below.

In addition, on September 27, 2021, Parks himself filed a pro se motion seeking "full" access to materials disclosed by the State during discovery. Essentially, Parks wanted to have discovery materials with him in jail for his review.

## 2. Motions Filed and Pretrial Conference
## on November 29, 2021

On November 29, 2021, Parks' appointed counsel filed two motions to depose witnesses.

At the pretrial conference that same day, Parks himself moved to have his appointed counsel withdraw and different counsel appointed for him. The district court explained that this was not

> commonly do[ne]. . . . [W]hen you're appointed a public defender, you get a public defender unless there's some egregious thing that's going on that you don't feel you're being properly represented. The Court will allow you to represent yourself, but the Court doesn't usually appoint a different public defender.

Parks then stated that he did not feel that he was being properly represented by his appointed counsel. Parks said that he had "asked for a fast and speedy trial," but that his appointed counsel "fil[ed] continuances without [his] knowledge." Parks also said that this was "[his] first time coming to court," implicitly contradicting the court orders stating that he was present personally when his appointed counsel made two of the motions to continue.

Parks then asked the court whether he "h[ad] a right to a fast and speedy trial." The court stated that Parks had that right but explained that it was the role of Parks' counsel, and not the court, to advise him about how that right played out in his case. Parks responded that he had not been so advised, and he asked the court to ask his counsel why she was "not agreeing" with him on a "fast and speedy tr[ia]l." Parks also asked the court whether he had the right to tell counsel that he disagreed with her actions. The court told Parks that it

would not be appropriate for the court to inquire into why counsel did "not agree[]" with him, because that question implicated attorney-client privilege. The court similarly said that while Parks had a right to communicate his desires to counsel, counsel's subsequent advice to him should remain between him and his counsel. Parks made further comments along those lines and even accused his counsel of "working with the prosecution." However, the court eventually stopped Parks and explained that it could sustain his motion for counsel's withdrawal and allow him to represent himself, or Parks could attempt to work things out with his counsel.

Parks opted to retain his appointed counsel. After he did so, Parks reiterated that he did not want any "more motions" or to depose witnesses. However, Parks also stated that if counsel had been working in his best interests, she would have made "all kind[s] of other motions," including to suppress evidence. The court overruled Parks' motion for appointed counsel's withdrawal.

The court then turned to Parks' motion for personal access to discovery. The State objected that while discovery had been provided to Parks' counsel, it came with a stipulation that counsel not provide copies of those materials to the defendant. The State argued that this was the standard practice in Douglas County. The State also argued that it would not be "appropriate" to give Parks copies of the materials, given the alleged offenses. Parks' counsel agreed that the State had provided "numerous" items to her. She also stated that per her office's policy, she had not sent copies of the materials to the jail for Parks to review on his own. Parks objected to that arrangement, but his motion was overruled.

Parks did not request, and the court did not make, any rulings on the motions to depose that had been filed that same day. Instead, the court suggested that Parks and his appointed counsel have "some more discussion going forward" about those motions.

### 3. Subsequent Pretrial Motions

In January 2022, Parks retained new counsel and his appointed counsel withdrew. Parks' retained counsel subsequently filed or otherwise made several pretrial motions, including another motion for Parks to have personal access to discovery materials. However, Parks does not dispute on appeal that the delays associated with those motions are attributable to him. Therefore, we need note only the following information about the motions made by Parks' retained counsel. As a result of retained counsel's motions,

• the pretrial conference was continued
• from February 4 until February 18, 2022;
• from February 18 until March 2, 2022; and
• from March 2 until March 9, 2022; and
• the trial was continued from May 16, 2022, until September 21, 2022.

Also, the district court overruled the second motion seeking personal access to discovery materials for Parks.

### 4. Motion for Discharge on Speedy Trial Grounds

On September 19, 2022, 2 days before the trial was to start, Parks moved for absolute discharge, alleging violations of his statutory and constitutional rights to a speedy trial. The crux of that motion, as amended, was that the delays that resulted from the motions to continue and to depose made by his appointed counsel should not be attributed to him. Parks alleged that the continuances were "requested and granted without [his] knowledge, consent, request or authority" and that the court had not yet ruled on the motions to depose. As such, Parks claimed that the time to bring him to trial had expired on or around November 7, 2021, before what he alleged was his first appearance before the court.

On the following day, September 20, 2022, a hearing was held on Parks' motion. At the hearing, the State disputed Parks' claim that the delays resulting from the motions made

by his appointed counsel should not count against him when determining whether he was brought to trial by the statutory 6-month speedy trial deadline. The State argued that when the delays attributable to Parks were excluded, there had been only 49 days of delay in bringing him to trial. However, in support of those arguments, the State introduced into evidence exhibits that Parks would argue supported his claim that his speedy trial rights were violated. Those exhibits showed that an order to transport Parks to court for the pretrial conference on August 13, 2021, was canceled, apparently contradicting the court order stating that Parks was present personally at the August 13 proceeding. The exhibits also showed that the deposition of one of the two witnesses whom appointed counsel sought to depose had been completed, even without a court order on the motions to depose.

Consistent with the evidence described above, Parks' argument in support of discharge primarily concerned the court orders granting his appointed counsel's motions to continue. Parks argued that the orders that stated he was present personally when the motion was made were contradicted by the record, which he claimed clearly showed that "[he] was never in court." Parks similarly argued that there was nothing in the record to show that his appointed counsel "even requested" the continuances or that she made the representations about consulting him recited in the orders. Parks also noted other issues with the alleged motions to continue, including that they were not in writing as required under Neb. Rev. Stat. § 25-1148 (Reissue 2016). In addition, Parks argued that the district court was in part responsible for the delay because it had not ruled on the motions to depose.

Likewise, as to his constitutional rights to a speedy trial, Parks argued that the reasons for the delay were not known "because there is no record. There's no record of good cause." Parks also argued that he had asserted his speedy trial rights at the pretrial conference on November 29, 2021. In addition, Parks claimed that he was prejudiced by the delay in

bringing him to trial because during the period of the delay, the State added a habitual criminal charge and continued to "prepare and gather more evidence" against him.

The district court overruled Parks' motion to discharge. As to Parks' claims regarding his statutory speedy trial rights, the court noted that Parks had only recently moved for discharge, even though, under his theory, the speedy trial clock "ran several months ago." The court agreed with the State that only 49 days had run on Parks' speedy trial clock. The court found that the other 453 days of delay in bringing Parks to trial were attributable to him and that they were thus to be excluded in determining whether he was brought to trial within the 6-month deadline.

The court attributed a specific number of days of delay to each of the motions to continue requested by Parks' appointed and retained counsels. The court also noted that the motions to depose filed by Parks' appointed counsel on November 29, 2021, had "stopped the clock" from that date through the date set for trial, because they had "never come before the Court for an order or been withdrawn." The court mentioned Parks' pro se motion for personal access to discovery in its recitation of the facts. However, the court did not attribute any specific number of excludable days to that motion or include the motion in its speedy trial calculation.

The court similarly rejected Parks' claims regarding his constitutional rights to a speedy trial as "meritless and patently frivolous." The court noted that Parks was charged with seven felony offenses, that he had initially been scheduled for trial "almost exactly one year from the date the information was filed," and that in preparing for trial, Parks' counsel did what "any other criminal defense attorney would have done."

## 5. Interlocutory Appeal

Parks appealed to the Nebraska Court of Appeals, assigning, restated, reordered, and consolidated, that the district court erred in (1) granting his appointed counsel's motions

to continue and then finding that the continuances tolled his speedy trial rights, (2) finding that any time was excludable due to his pro se motion for personal access to discovery, (3) "failing" to rule on the motions to depose and then finding that the motions tolled his speedy trial rights, and (4) overruling his motion for absolute discharge on statutory and constitutional speedy trial grounds.

The Court of Appeals affirmed the order of the district court overruling Parks' motion for absolute discharge.[1] The Court of Appeals began by finding that it lacked jurisdiction over Parks' claims regarding his constitutional speedy trial rights on interlocutory appeal.[2] The court then found that Parks' claims regarding his statutory speedy trial rights were without merit.

The Court of Appeals recognized that "the record call[ed] into question that part of the [district] court's orders that stated Parks was present for at least two of the hearings."[3] The Court of Appeals also recognized that Parks' "testimony" at the pretrial conference on November 29, 2021, contested the district court's "findings" that Parks' appointed counsel had advised him the continuances would toll his speedy trial rights and that Parks "made it clear" at that pretrial conference that he "did not want motions filed" and did not support deposing the witnesses.[4]

Nonetheless, the Court of Appeals rejected Parks' argument that the district court erred in excluding the delays that resulted from his appointed counsel's motions to continue, because the motions did not comply with § 25-1148 or with other purported requirements and because he did

---

[1] *State v. Parks*, No. A-22-691, 2023 WL 3477425 (Neb. App. May 16, 2023) (selected for posting to court website) (petition for further review denied June 29, 2023).

[2] See, e.g., *State v. Moody*, 311 Neb. 143, 970 N.W.2d 770 (2022).

[3] *Parks, supra* note 1, 2023 WL 3477425 at *4.

[4] *Id*. at *4, *5.

not "personally consent" to the continuances.[5] The Court of
Appeals also rejected Parks' argument that because the district
court never ruled on the motions to depose, it erred in exclud-
ing the entire time that had elapsed since those motions were
filed.[6] As to Parks' claims regarding his pro se motion for
personal access to discovery, the Court of Appeals concluded
that it did not need to resolve that issue because the time asso-
ciated with that motion was also associated with the motions
to continue made by his appointed counsel.

Parks petitioned for further review of the order of the Court
of Appeals. That petition was denied, and on July 10, 2023, the
Court of Appeals issued its mandate. The district court subse-
quently entered judgment on the mandate on July 19.

## 6. Events at Trial

A jury trial was held from December 11 to 19, 2023. The
only matters from trial at issue in the present appeal are Parks'
"second motion for absolute discharge" and his motion for a
mistrial.[7] Therefore, the discussion here is limited to those
topics. Other matters from trial are discussed later in the opin-
ion as they relate to the parties' arguments on appeal.

At the start of the trial, Parks "renew[ed]" his motion for
absolute discharge "for the record and out of an abundance
of caution." The district court summarily denied the motion
"for the same reasons" that it denied Parks' initial motion
to discharge.

Subsequently, on the fifth day of trial, Parks moved for
a mistrial based, in part, on evidence of a video found on
Harbour's phone. The video, which showed an unrelated man
being murdered, came from a website that posts such videos.
However, the State apparently intended to introduce the video
into evidence in support of its theory that Parks shot Harbour
and Hatten because he saw the video on Harbour's phone and

---

[5] *Id*. at *4.

[6] *Parks, supra* note 1.

[7] Brief for appellant at 30.

believed that Harbour had a role in the murder of Parks' son. Parks' son was shot and killed in Omaha 5 days before Harbour and Hatten were shot.

In its opening arguments, the State claimed that Harbour "ha[d] a video on his phone" of a man "being chased and shot" that was "sort of interacted with" at approximately 7:07 a.m. on July 30, 2020, less than 30 minutes before the murders of Harbour and Hatten. Later in the trial, the State elicited testimony from Lee that shortly before the shootings, Parks and Harbour had looked at "pictures" on Harbour's phone while in the hotel room. Lee also testified that immediately after the shootings, Parks told her that he spotted a "picture . . . of his son's dead body" on Harbour's phone and that he believed Harbour "had something to do with [his] son getting killed." After Lee's testimony, an officer from the Omaha Police Department (OPD) testified about the murder of Parks' son. On cross-examination, Parks seemingly sought to elicit testimony from the officer about how news coverage of the murder of Parks' son differed from the video on Harbour's phone.

Following the officer's testimony, Parks filed a "Motion in Limine" to exclude the video and related evidence. Parks argued that Lee's testimony concerned "pictures," and not a video, and that, as such, there was "no evidence in the record" that Parks saw the video on Harbour's phone. The State opposed the motion, arguing that Lee's testimony, combined with an OPD detective's anticipated testimony that the video on the phone was "interacted with" at 7:07 a.m. on July 30, 2020, provided sufficient foundation for the video. The district court agreed with the State and overruled Parks' motion. However, shortly after that ruling, the State recommended that the court revisit Parks' motion because it had just discovered that the video first "appear[ed]" on Harbour's phone "months prior" to the shootings and next "appear[ed]" on the phone at 12:07 p.m. on July 30. The latter appearance was several hours after Harbour died.

Parks moved for a mistrial on the ground that the phone had "apparently been tampered with or handled" after Harbour's death. Parks claimed that given the apparent tampering, he needed to "investigate all the other stuff involved." However, the State disputed that there was evidence of tampering, and subsequent testimony by the detective outside the presence of the jury revealed that the mistake in time arose from an error in adjusting between universal and local time that had just been discovered. The detective also testified that phones connected to a network can "seek and download data without user interaction."

Parks then argued that a mistrial was warranted because the jury had heard irrelevant evidence regarding the video that was prejudicial to him. Parks also claimed that a mistrial was warranted because another OPD detective had testified on cross-examination that Parks had a "large sum of cash" on his person when he was arrested that was confiscated by federal officials. The detective was asked whether "[Parks] was on probation." She responded: "Yes, . . . probation or parole." Parks claimed that the officer knew that her testimony was "inadmissible." Alternatively, Parks asked that the trial be continued for 30 days so that he could hire his own experts to review the materials.

The district court overruled Parks' motion for a mistrial. The court found that the testimony about the circumstances of Parks' arrest was elicited by the defense and was not unfairly prejudicial. The court similarly found that "the comment" or "errors" about "the video time" had been "taken care of." The State ultimately never offered the video for admission into evidence.

### 7. Jury Verdicts and Sentences

At the close of evidence, the case was submitted to the jury, which found Parks guilty on all counts. Parks was later found to be a habitual criminal. Parks was sentenced to life imprisonment for each of the murder convictions and additional terms

of imprisonment for the other convictions, with all sentences to be served consecutively.

Parks timely appealed. The appeal was placed on our docket because of the imposition of life imprisonment.[8]

## III. ASSIGNMENTS OF ERROR

Parks assigns, restated, that the district court erred by continuing pretrial conferences without his knowledge and consent and contrary to his directives to his appointed counsel, based solely on oral motions to continue, and then finding the continuances tolled his speedy trial rights and that the Court of Appeals erred by affirming those errors. Parks also assigns, restated, that the district court committed plain error in failing to rule on his motions to depose, resulting in violations of his statutory and constitutional speedy trial rights. In addition, Park assigns, restated, that the district court erred in overruling his "second motion" for absolute discharge, as well as his motions for personal access to discovery materials and for a mistrial. Further, represented on appeal by new counsel, Parks assigns that his appointed and retained trial counsel were ineffective in multiple regards, as set forth below.

As an organizational matter, we note that we do not directly mirror Parks' assignments of error below. Instead, we consolidate Parks' various claims regarding his statutory speedy trial rights, as well as those regarding his constitutional speedy trial rights.

## IV. STANDARD OF REVIEW

Parks urges us to apply a plain error standard of review in assessing his claim regarding the districts court's "failure" to rule on the motions to discharge filed by his appointed counsel.[9] We decline to adopt such an approach. Instead, for the reasons set forth below, we find this claim to be foreclosed under the law-of-the-case doctrine insofar as it

---

[8] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2024).

[9] Brief for appellant at 24.

pertains to Parks' initial motion to discharge and his statutory speedy trial rights. Similarly, to the extent that the claim involves Parks' renewed motion to discharge or his constitutional speedy trial rights, we apply the customary standards of appellate review set forth below.

[1,2] Our standard of review for constitutional speedy trial claims mirrors the standard of review we apply in statutory speedy trial cases: Factual determinations relevant to the claim are reviewed for clear error while legal determinations are reviewed de novo.[10] Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[11]

[3,4] Discovery in a criminal case is generally controlled by either a statute or court rule.[12] Therefore, unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.[13] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[14]

[5] The decision whether to grant a motion for mistrial is similarly within the trial court's discretion and also will not be disturbed on appeal in the absence of an abuse of discretion.[15]

---

[10] *State v. Ramos, ante* p. 511, 23 N.W.3d 640 (2025).

[11] *State v. Rashad*, 316 Neb. 101, 3 N.W.3d 325 (2024).

[12] *State v. Torres Aquino*, 318 Neb. 771, 19 N.W.3d 222 (2025).

[13] *Id*.

[14] *State v. Turner*, 315 Neb. 661, 998 N.W.2d 783 (2024).

[15] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

[6,7] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[16] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[17]

## V. ANALYSIS

### 1. STATUTORY SPEEDY TRIAL RIGHTS

We begin with Parks' various claims regarding his statutory speedy trial rights. We understand those claims to encompass the motions to continue and to depose filed by Parks' appointed counsel, the district court's overruling of Parks' initial motion for absolute discharge, the Court of Appeals' affirmance of the district court's order, and the district court's subsequent overruling of Parks' renewed or "second" motion to discharge.[18]

#### (a) Legal Framework

[8,9] The statutory right to a speedy trial is set forth in § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 2016).[19] Under those statutes, criminal defendants must be brought to trial by a 6-month deadline.[20] However, the statutes also prescribe that certain periods of delay are excluded when determining whether the defendant was brought to trial by the 6-month deadline.[21] As is relevant here, those periods of delay include "the time from filing until final disposition

---

[16] *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025).

[17] *Id*.

[18] Brief for appellant at 30.

[19] *Rashad, supra* note 11.

[20] See, e.g., *State v. Abernathy*, 310 Neb. 880, 969 N.W.2d 871 (2022).

[21] See § 29-1207(4).

of pretrial motions of the defendant,"[22] as well as "[t]he period of delay resulting from a continuance granted at the request or with the consent of the defendant."[23] If a defendant is not brought to trial by the 6-month speedy trial deadline, as extended by any excluded periods, he or she is entitled to absolute discharge for the offense charged and for any other offense required by law to be joined with that offense.[24]

[10,11] An appeal from the denial of a motion for discharge under the speedy trial statutes presents a relatively simple mathematical computation of whether the 6-month speedy trial clock, as extended by statutorily excludable periods, has expired before the commencement of trial and does not require any showing of prejudice.[25] To calculate the time for speedy trial purposes, a court must exclude the day the information was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.[26]

(b) Claims Regarding Initial Motion for
Discharge Are Foreclosed Under
Law-of-Case Doctrine

Parks claims that the district court erred in overruling his initial motion for absolute discharge and that the Court

---

[22] See § 29-1207(4)(a). See, also, *State v. Nelson*, 313 Neb. 464, 984 N.W.2d 620 (2023) (period excludable under § 29-1207(4)(a) commences on day immediately after filing of defendant's pretrial motion and ends at final disposition, which occurs on date motion is granted or denied); *State v. Murphy*, 255 Neb. 797, 587 N.W.2d 384 (1998) (motion to depose is pretrial motion for purposes of § 29-1207(4)(a)).

[23] See § 29-1207(4)(b). See, also, *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019) (period excludable for continuance under § 29-1207(4)(b) commences on day immediately after continuance is granted and includes day on which continuance ends).

[24] *Rashad, supra* note 11.

[25] *State v. Chase*, 310 Neb. 160, 964 N.W.2d 254 (2021).

[26] *Rashad, supra* note 11.

of Appeals erred in affirming that ruling, because delays that should not have been attributed to him were improperly excluded in determining whether he was brought to trial by the 6-month speedy trial deadline. In particular, Parks raises various arguments as to why the delays associated with his appointed counsel's motions to continue, the motions to depose, and his pro se motion for personal access to discovery should not have been attributed to him. Parks claims that insofar as those delays were not attributable to him, the speedy trial clock actually expired before he first came to court on November 29, 2021. The State counters that Parks' claims regarding the overruling of his initial motion for discharge on statutory speedy trial grounds are foreclosed under the law-of-the-case doctrine.

[12,13] The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage.[27] Under the law-of-the-case doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.[28]

We agree with the State that under the law-of-the-case doctrine, Parks cannot relitigate in the present appeal the various issues that he seeks to raise insofar as they concern his initial motion for absolute discharge on statutory speedy trial grounds. In his prior interlocutory appeal, Parks raised all the issues regarding the motions to continue filed by his appointed counsel, the motions to depose, and his pro se motion for personal access to discovery that he seeks to raise here. The Court of Appeals ruled against him. Parks then petitioned for further review of the order of the Court of Appeals, which was denied. Accordingly, Parks cannot raise those issues in the present appeal because they were conclusively resolved against him by an appellate court.

---

[27] *In re Estate of Adelung*, 312 Neb. 647, 980 N.W.2d 415 (2022).

[28] *Id*.

Our conclusion here is dispositive as to Parks' assignment that the district court erred by continuing pretrial conferences without his knowledge and consent and contrary to his directives to his appointed counsel, based solely on oral motions to continue, and then finding the continuances tolled his speedy trial rights and that the Court of Appeals erred by affirming those errors.

(c) Parks Waived Speedy Trial Rights
With Initial Motion to Discharge
and Subsequent Appeal

Parks also argues that the district court erred in overruling his renewed motion at the start of the trial for absolute discharge on statutory speedy trial grounds. While Parks can be seen to raise many of the same arguments here about the motions to continue and to depose that he raised in conjunction with his initial motion to discharge, underlying all those arguments in his belief that "the motions to depose filed [in] his case do not toll his speedy trial clock indefinitely, and that, at a minimum, his speedy trial clock should have resumed" after his interlocutory appeal.[29] Parks claims that had the clock restarted after the appeal, he would have been entitled to absolute discharge because when the 49 days of delay that the district court found were attributable to the State before the interlocutory appeal are added to the 145 days of delay that Parks claims should be attributed to the State after the interlocutory appeal, he was not brought to trial within 6 months of the indictment. The State, on the other hand, maintains that under *State v. Mortensen*,[30] Parks waived his statutory right to a speedy trial before he made his renewed motion for discharge.

[14] We agree with the State that Parks waived his statutory speedy trial rights under § 29-1207(4)(b). In *Mortensen*, we concluded that a motion to discharge is a request for

---

[29] Brief for appellant at 30.
[30] *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

a continuance because it requires the court to dispose of the motion before a trial can be commenced.[31] As such, we reasoned that motions to discharge, like other requests to continue, can result in a waiver of the defendant's speedy trial rights under § 29-1207(4)(b).[32] Subsequently, in *State v. Riessland*,[33] we explained that under *Mortensen*, a defendant permanently waives his or her statutory speedy trial rights under § 29-1207(4)(b) when an ultimately unsuccessful motion for discharge results in the continuance of a timely trial to a date outside the statutory 6-month period, as calculated on the date the motion for discharge was filed. The continuance resulting from Parks' initial motion for discharge and the subsequent appeal, followed by the petition for further review, had such an effect.

Without excludable days, the trial deadline would have been November 7, 2021 (given an information filed on May 7, 2021). But the various motions filed by Parks' appointed and retained trial counsel resulted in 453 excludable days and a new speedy trial date of February 3, 2023. Parks' trial was initially rescheduled for September 21, 2022, which was within the statutory 6-month period, taking into consideration the excludable days. However, Parks' unsuccessful initial motion for discharge, coupled with his unsuccessful appeal of the overruling of that motion, resulted in his trial date being continued well beyond February 3, 2023. The Court of Appeals did not issue its decision until May 16, 2023, and Parks then petitioned for further review of that decision. Accordingly, Parks permanently waived his statutory speedy trial rights under § 29-1207(4)(b) and had no such rights to assert when he renewed his motion for absolute discharge at the trial on December 11, 2023.

---

[31] *Id*.

[32] *Id*.

[33] *State v. Riessland*, 310 Neb. 262, 965 N.W.2d 13 (2021).

Parks attempts to avoid this conclusion by arguing that "[t]he rule in *Mortensen* should not be absolute, but [instead] should account for exceptional cases such as this."[34] However, the rule set forth in *Mortensen* and *Riessland* is based on the plain language of § 29-1207(4)(b). As amended in 2010, that section prescribes, in relevant part, that "[a] defendant is deemed to have waived his or her right to speedy trial when the period of delay resulting from a continuance granted at the request of the defendant or his or her counsel extends the trial date beyond the statutory six-month period." The statute does not provide for any exceptions, even in purportedly exceptional cases, and it is not our role to read such exceptions into the statute.[35] The cases that Parks cites for the proposition that "the speedy trial clock resumes following the conclusion of [an] interlocutory appeal"[36] predated the 2010 amendments to § 29-1207(4)(b) and are therefore inapposite under the facts and circumstances of this case.[37]

[15] Because Parks permanently waived his speedy trial rights under § 29-1207(4)(b) before he renewed his motion to discharge, the district court did not err or abuse its discretion in overruling that motion. For the sake of completeness, we note that our conclusion here is dispositive as to Parks' arguments that the State failed to meet its burden to prove the existence of an excludable period of time and that the district court did not engage in the required analysis or calculate his speedy trial date when overruling his renewed motion to discharge. Once a defendant has waived his or her statutory right to a speedy trial, an exact calculation of days remaining

---

[34] Reply brief for appellant at 5.

[35] *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025) (it is not within province of courts to read meaning into statute that is not there or to read anything direct and plain out of statute).

[36] Brief for appellant at 32.

[37] See, e.g., *State v. Baker*, 264 Neb. 867, 652 N.W.2d 612 (2002); *State v. Ward*, 257 Neb. 377, 597 N.W.2d 614 (1999), *disapproved on other grounds, State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004).

on the speedy trial clock is no longer required.[38] The other purported requirements to which Parks points are similarly inapplicable given his waiver of his statutory speedy trial rights. Our conclusion here also means that we have no need to address Parks' argument that the only way the delays in bringing him to trial after the interlocutory appeal could have been excluded was if the delays associated with the motions to depose were attributed to him, as he claims should not be done.

Accordingly, for the reasons set forth above, there is no merit to Parks' assignments that the district court erred in not ruling on the motions to depose, resulting in a violation of his statutory rights to a speedy trial, and in overruling his renewed motion for discharge on statutory speedy trial grounds.

### 2. Constitutional Speedy Trial Rights

Having found no violation of Parks' statutory speedy trial rights, we now turn to his claim that his constitutional speedy trial rights were violated. Broadly speaking, this claim, like Parks' claim regarding his statutory speedy trial rights, encompasses the motions to continue and to depose filed by his appointed counsel and the overruling of his initial and renewed motions to discharge.

### (a) Legal Framework

[16] The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11.[39] The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each

---

[38] *State v. Lear*, 316 Neb. 14, 2 N.W.3d 632 (2024).

[39] *State v. Brown*, 310 Neb. 224, 964 N.W.2d 682 (2021). But see *Abernathy, supra* note 20 (explaining that although appellate court was assumed in *Brown* and related cases to have jurisdiction over constitutional speedy trial claims raised in interlocutory appeal, such jurisdiction is in fact lacking, because pretrial order denying motion for discharge on constitutional speedy trial grounds is not final, appealable order).

other.[40] Nevertheless, § 29-1207 provides a useful standard for assessing whether the length of a trial delay is unreasonable under the U.S. and Nebraska Constitutions.[41] "[I]t is an unusual case in which the constitutional right to a speedy trial has been violated when the time limits under the speedy trial act have been met."[42]

[17,18] A speedy trial, generally, is one conducted according to prevailing rules and proceedings of law, free from arbitrary, vexatious, and oppressive delay.[43] "There is 'no fixed point' when it can be determined 'how long is too long in a system where justice is supposed to be swift but deliberate.'"[44] Instead, determining whether a defendant's constitutional right to a speedy trial has been violated requires application of a balancing test that involves consideration of four factors: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.[45] None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial.[46] Rather, the factors are related and must be considered together with other circumstances as may be relevant.[47]

(b) Parks' Constitutional Speedy Trial
Rights Were Not Violated

Parks claims that all four of the aforementioned factors favor him. He claims there was "well over a year" of delay

---

[40] *State v. Yzeta*, 313 Neb. 202, 983 N.W.2d 124 (2023).

[41] *Brown*, *supra* note 39.

[42] *Id*. at 240, 964 N.W.2d at 693.

[43] *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014).

[44] *Id*. at 302, 848 N.W.2d at 595.

[45] *Brown, supra* note 39.

[46] *Id*.

[47] *Id*.

that was "not attributable to [him]" in bringing him to trial.[48] Parks arrives at this number by adding the 273 days that passed between when the information was filed and when his retained counsel first requested a continuance to the 145 days that passed between when the district court entered judgment on the mandate after the interlocutory appeal and the start of trial. Parks also claims, as discussed below, that those delays must be attributed to his appointed counsel and the court, and not to him; that he repeatedly asserted his right to a speedy trial; and that he was prejudiced by the delay. The State, on the other hand, argues that none of the four factors favors Parks.

### (i) Length of Delay

The first factor, the length of the delay, "is to some extent a triggering mechanism."[49] "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[50] In other words, if the delay is not presumptively prejudicial, courts need not consider the reason for the delay, the defendant's assertion of the right, or prejudice to the defendant.

[19,20] Parks points to a total of 418 days' delay that he claims should not have been attributed to him. Parks therefore claims that the delay was presumptively prejudicial. Parks is correct that a delay of a year or more is the benchmark commonly recognized as presumptively prejudicial in a constitutional speedy trial analysis.[51] However, for the reasons set forth below, we reject Parks' claim that the bulk of the delay of which he complains cannot be attributed to him. Also, as the State observes, Parks was charged with "significant and

---

[48] Brief for appellant at 35.

[49] *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

[50] *Id*.

[51] *State v. Short*, 310 Neb. 81, 964 N.W.2d 272 (2021).

numerous" felonies, including two counts of first degree murder.[52] When considering the length of the delay, this and other courts have recognized that the more complex and serious the crime, the longer a delay might be tolerated, because society also has an interest in ensuring that longer sentences are rendered upon the most exact verdicts possible.[53]

Thus, even assuming that the delay here is seen to be presumptively prejudicial, we do not view this factor to weigh heavily in Parks' favor.

### *(ii) Reason for Delay*

The second factor, the reason for the delay, evaluates "whether the government or the criminal defendant is more to blame."[54] "A deliberate attempt [by the State] to delay the trial in order to hamper the defense should be weighted heavily" against the State.[55] A "more neutral reason such as negligence or overcrowded courts should be weighted less heavily" against the State but nonetheless should be taken into consideration because the "ultimate responsibility for such circumstances must rest" with the State.[56] However, "a valid reason, such as a missing witness, should serve to justify appropriate delay."[57]

---

[52] Brief for appellee at 21.

[53] *Short, supra* note 51. See, also, *State v. Young*, 217 Vt. 537, 543, 292 A.3d 689, 695 (2023) (delay of 616 days was not "'extreme in relation to . . . the nature of the case'" and did not weigh heavily in defendant's favor given complex felony charges against him); *State v. Spearman*, 2012 NMSC 023, ¶ 21, 283 P.3d 272, 277 (2012) ("[a] delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases"); *Humphrey v. State*, 185 P.3d 1236 (Wyo. 2008) (delay of 561 days in prosecution for murder did not, standing alone, raise presumption of prejudice).

[54] *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

[55] *Barker, supra* note 49, 407 U.S. at 531.

[56] *Id*.

[57] *Id*.

Parks would have us weight the delays of which he complains against the State, and not against him, for multiple reasons. First, Parks argues that the delays that resulted from the motions to continue filed by his appointed counsel should not count against him because his appointed counsel made those motions "contrary to [his] express wishes."[58] Second, Parks argues that the "conduct" of his appointed counsel—which we understand to mean both the filing of the motions to continue the pretrial conferences and the failure to withdraw the motions to depose after Parks objected to them—deprived him of his "personally held constitutional right [to] a speedy trial."[59] Third, Parks argues that any delays that resulted from the motions to depose should be excluded because the district court "fail[ed]" to rule on those motions.[60] Fourth, Parks argues that "systemic failures" by the public defender's office and the court caused the delays here.[61]

As to the motions to continue, we do not see anything in the record to persuade us that those delays should not be attributed to Parks. The district court's orders show that Parks' appointed counsel requested the continuances, and "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant."[62] To be sure, Parks challenges the accuracy of the court orders. However, Parks points to nothing in the record showing that he made any attempt to correct the orders in the district court.

[21] As we have previously explained, "'The transcript imports absolute verity, and cannot be impeached. If incorrect, or if it fails to speak the truth, the correction must be

---

[58] Brief for appellant at 36.

[59] *Id*. at 37.

[60] *Id*. at 24.

[61] Reply brief for appellant at 4.

[62] *Vermont v. Brillon*, 556 U.S. 81, 90-91, 129 S. Ct. 1283, 173 L. Ed. 2d 231 (2009). See, also, *Hettle, supra* note 43.

made in the district court and not here.'"[63] In other words, absent proof to the contrary, the transcript of the orders or judgment entered is the sole, conclusive, and unimpeachable evidence of the proceedings in the district court, and the correctness of the record may not be assailed collaterally in an appellate court.[64]

Admittedly, there is evidence in the record showing that the order to transport Parks to the pretrial conference on August 13, 2021, was canceled. However, at most, this evidence suggests that the court order regarding the August 13 pretrial conference may have incorrectly stated that Parks was personally present. It does not necessarily follow from this that the order regarding the June 25 pretrial conference incorrectly stated that Parks was personally present. Neither does it necessarily follow that any of the four orders incorrectly stated Parks' appointed counsel "confirm[ed]" that she had advised Parks that the continuance would toll the speedy trial clock and that Parks understood and consented to this, nor that appointed counsel mispresented matters when she provided such confirmation.

[22] Parks also points to his statement at the pretrial conference on November 29, 2021, that this was "[his] first time coming to court." But Parks was not under oath when he made this statement, and no testimony to this effect was elicited from him at the subsequent hearing on his motion to discharge. Oral argument at the trial level is not evidence.[65] Thus, we decline to give Parks' statement the significance that he attributes to it.

Parks' claim that the constitutional right to a speedy trial is "amongst those fundamental rights that are a defendant[']s

---

[63] *Sulzle v. Sulzle*, 318 Neb. 194, 212, 14 N.W.3d 532, 547 (2024) (quoting *Lippincott v. Lippincott*, 144 Neb. 486, 13 N.W.2d 721 (1944)).

[64] *Sulzle, supra* note 63.

[65] Cf. *State v. Bassette*, 6 Neb. App. 192, 571 N.W.2d 133 (1997). See, also, *In re Interest of Kochner*, 266 Neb. 114, 662 N.W.2d 195 (2003).

to assert or waive personally" is similarly unavailing.[66] We see nothing in the record on appeal to suggest that Parks raised this issue with the district court. When an argument or theory is raised for the first time on appeal, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue that was never presented and submitted to it for disposition.[67]

As to the motions to depose, we reject Parks' claim that the trial court should be seen to be responsible for the delays because it "fail[ed]" to rule on the motions.[68] Parks argues that the district court had an obligation to rule on those motions under the judicial code of conduct and because it had "implicitly assured" him at the pretrial conference on November 29, 2021, that it would uphold his speedy trial rights.[69] However,

> [i]t is not the State's or the court's burden to pursue the defendant's motions. Such motions are the primary responsibility of the party that brings them, and it will be presumed that a delay in hearing defense pretrial motions is attributable to the defendant unless the record affirmatively indicates otherwise.[70]

We see nothing in the record here to suggest that the delay in ruling on the motions to depose should not be attributed to Parks.

---

[66] Brief for appellant at 36.

[67] *132 Ventures v. Active Spine Physical Therapy*, 318 Neb. 64, 13 N.W.3d 441 (2024).

[68] Brief for appellant at 24.

[69] *Id*. at 29.

[70] *State v. Turner*, 252 Neb. 620, 630, 564 N.W.2d 231, 238 (1997). See, also, *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006); *State v. Poe*, 266 Neb. 437, 665 N.W.2d 654 (2003); *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995); *State v. Williams*, 239 Neb. 985, 480 N.W.2d 390 (1992); *State v. Rodriguez*, 6 Neb. App. 67, 569 N.W.2d 686 (1997).

The motions to depose were filed on November 29, 2021, which was the same day as the pretrial conference. As such, we see no issue with the district court's not ruling on the motions to depose at that time, even if Parks' statement that he opposed the motions could be seen to constitute a request for a ruling on them. The court was aware of the disagreements between Parks and his appointed counsel regarding the motions and contemplated their having "some more discussion going forward." After that pretrial conference, Parks claims that the district court had "no fewer than five . . . opportunities" to rule on the motions to depose, but "took no action."[71] However, Parks does not point to anything in the record to show that he insisted on a ruling on the motions to depose on those occasions. We also observe that the bulk of the delay associated with the motions to depose in the period before Parks' initial motion to discharge coincided with delays resulting from motions to continue made by Parks' retained counsel that Parks concedes are attributable to him.

We take a similar view of Parks' argument that the delays here reflected systemic failures by the public defender's office and the court. In *Vermont v. Brillon*,[72] the U.S. Supreme Court recognized that the general rule attributing delays caused by the defendant's appointed counsel to the defendant was "not absolute" and that delays resulting from a "systemic 'breakdown in the public defender system'" could be attributed to the State. However, the *Brillon* Court observed that in that case, the lower court had not determined there was such a systemic breakdown and there was nothing in the record to suggest "institutional problems" had caused any part of the delay.[73]

Like the U.S. Supreme Court in *Brillon*, we are not persuaded that the issues of which Parks complains were institutional problems. As to his appointed counsel, Parks primarily

---

[71] Brief for appellant at 28.

[72] *Brillon, supra* note 62, 556 U.S. at 94.

[73] *Id*.

complains that she visited him in jail only once, that she filed motions to continue contrary to his wishes and without his consent, and that she did not withdraw the motions to depose once he expressed his disapproval of them. These seem to us to be routine disagreements between attorney and client regarding the conduct of the litigation, and not systemic issues with the public defender's office.[74]

The same is true as to the court.[75] Parks primarily complains of alleged errors in the court orders and the court's purported failure to rule on the motions to depose and to advise him about his speedy trial rights at the pretrial conference on November 29, 2021. However, Parks did not correct the orders in the district court or insist on a ruling on the motions to depose. His characterization of the pretrial conference on November 29 ignores the fact that the court declined

[74] See, e.g., *State v. Ochoa*, 2017 NMSC 031, 406 P.3d 505 (2017) (systemic breakdown in public defender system must be based on problems that are both institutional in nature and debilitating in scope); *Weis v. State*, 287 Ga. 46, 694 S.E.2d 350 (2010) (funding problems did not amount to breakdown of entire public defender system when lack of funding was not sole factor contributing to delay); *State v. Shaw*, 84062-2-I, 2023 WL 6060522 (Wash. App. Sept. 18, 2023) (unpublished opinion listed at 28 Wash. App. 2d 1015 (2023)) (declining to find systemic breakdown, even though defense counsel complained several times of being overburdened, where there was no record of how county's department of public defense functioned during period in question); *People v. Allen*, No. B288740, 2021 WL 268353 (Cal. App. Jan. 27, 2021) (unpublished opinion) (requests for continuances by defendant's counsel were not attributable to systemic breakdown in public defender's office where continuances were necessitated by legitimate need to obtain additional or updated evaluations).

[75] Cf., *U.S. v. Young*, 657 F.3d 408 (6th Cir. 2011) (rejecting argument that district court's untimeliness was systemic failure that should weigh against State); *People v. Williams*, 58 Cal. 4th 197, 250, 315 P.3d 1, 39, 165 Cal. Rptr. 3d 717, 762 (Cal. 2013) (even though trial court "repeatedly indulged defense counsel's requests for continuances due to lack of preparation," it was not responsible for delay); *Allen, supra* note 74 (declining to attribute delay to trial court where court actively set trial dates and sought to move case along, but defense counsel continued to litigate collateral issues).

to answer specific questions in deference to Parks' attorney-client privilege.

Accordingly, because Parks' various arguments as to why the delays should not be attributed to him are without merit, we view this factor to weigh against Parks.

### (iii) Defendant's Assertion of Right

With regard to the third factor, Parks claims that he "forcefully asserted" his right to a speedy trial on multiple occasions.[76] In particular, Parks points to his statements at the pretrial conference on November 29, 2021; his initial motion to discharge; his interlocutory appeal; his renewed motion for discharge at the start of the trial; and his statement at allocution that his right to a speedy trial had been violated. However, as the State observes, Parks "undermined" those assertions of his speedy trial rights in various ways.[77]

Parks did declare at the pretrial conference on November 29, 2021, that he did not want "more motions" or to depose witnesses. But he also complained of his appointed counsel's failure to make other motions, including to suppress evidence, and any delay associated with such motions would have been attributable to Parks.[78] Parks also waited until the eve of the trial (which had been continued from May 16 to September 21, 2022, at his request) to file his initial motion to discharge, even though he maintained that his speedy trial clock had run before the pretrial conference on November 29, 2021.[79] Moreover, Parks' appointed and retained counsel requested multiple continuances and filed multiple pretrial motions, tolling the speedy

---

[76] Brief for appellant at 38.

[77] Brief for appellee at 22.

[78] See, e.g., *Nelson, supra* note 22.

[79] See, e.g., *Short, supra* note 51 (defendant waited until after period of continuances granted at his request to assert that trial had been delayed for too long); *Hettle, supra* note 43 (defendant waited silently until eve of trial to voice concern).

trial clock.[80] Thus, we do not view this factor to favor Parks in any significant way, if at all.

### (iv) Prejudice to Defendant

[23] As to the fourth factor, the deprivation of the right to a speedy trial "does not *per se* prejudice the accused's ability to defend himself."[81] To the contrary, a showing of actual prejudice to a defendant alleging violation of constitutional speedy trial rights is required if the government exercised reasonable diligence in pursuing the defendant, as was the case here.[82]

Under *Barker v. Wingo*,[83] the prejudice factor is to be assessed "'in the light of the interests of defendants which the speedy trial right was designed to protect.'"[84] The *Barker* Court identified three such interests: "'(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'"[85] Of these three interests, the third is considered most important, "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"[86]

---

[80] See, e.g., *Shaw, supra* note 74 (finding that third factor weighed against defendant or at best was neutral, where defendant's repeated assertions of his right to speedy trial and objections to continuances were almost always in response to his own attorney's motions, and nearly all of continuances were for defense counsel to prepare for trial).

[81] *Barker, supra* note 49, 407 U.S. at 521.

[82] *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016), *abrogated on other grounds, State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

[83] *Barker, supra* note 49.

[84] *Lovvorn, supra* note 23, 303 Neb. at 853, 932 N.W.2d at 70 (quoting *Barker, supra* note 49).

[85] *Id*. at 853, 932 N.W.2d at 71.

[86] *Betancourt-Garcia, supra* note 82, 295 Neb. at 188, 887 N.W.2d at 311. Accord *Guzman, supra* note 82.

Parks claims that all three interests mentioned in *Barker* are implicated here. Specifically, Parks claims that he was incarcerated for over 6 months before he ever appeared in court and that he ultimately "spent more than a year in pretrial incarceration due to delay that was not reasonably attributable to him."[87] Parks also points to his pro se motion for personal access to discovery and to his statements at the pretrial conference on November 29, 2021, as evidencing his anxiety and concern. In addition, at oral arguments, Parks asked this court to take judicial notice of the entire case file below on the ground that the file would show issues with the case, going back to the arrest warrant, that had caused him anxiety and concern. Finally, Parks claims that his defense was impaired by the delay in bringing him to trial because the key witness against him, Lee, was "threatened and pressured" to falsely implicate him in the shootings, and a witness who knew the identity of the actual shooter died.[88]

The first two interests that Parks claims do not appear to involve much beyond the oppression that generally arises from incarceration and the anxiety and concern that generally result from criminal charges,[89] and we decline to take judicial notice of the entire file below.[90] However, even assuming

---

[87] Brief for appellant at 39.

[88] *Id*.

[89] See, e.g., *U.S. v. Henson*, 945 F.2d 430, 438 (1st Cir. 1991) (because "considerable anxiety normally attends the initiation and pendency of criminal charges; . . . only undue pressures are considered") (internal quotation marks omitted); *Cotney v. State*, 503 P.3d 58 (Wyo. 2022) (because certain amount of pretrial anxiety naturally exists, defendant must demonstrate that he or she suffered extraordinary or unusual pretrial anxiety); *McLemore v. Commonwealth*, 590 S.W.3d 229 (Ky. 2019) (defendant offered no specific evidence of any unusual amount of anxiety or concern during incarceration). See, also, *U.S. v. Ogiekpolor*, 122 F.4th 1296 (11th Cir. 2024) (defendant's displeasure with counsel for failing to make government try him in timely fashion, among other things, was not sufficient to demonstrate his anxiety and concern).

[90] See, e.g., *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

oppressive pretrial incarceration and anxiety and concern, Parks failed to show any impairment of his defense. To be sure, Parks' brief on appeal cites specific ways in which his defense was allegedly impaired. However, there is nothing in the record before us to suggest that Parks raised those alleged impairments with the district court.[91] Instead, Parks argued before the district court that the delay prejudiced him by allowing the State to introduce a habitual criminal charge against him and to "prepare and gather more evidence." As such, we view this factor to weigh against Parks.

Accordingly, after weighing the relevant factors as set forth above, we conclude that Parks' constitutional speedy trial rights were not violated. This conclusion is dispositive as to Parks' assignments that the district court erred in not ruling on the motions to depose, resulting in a violation of his constitutional speedy trial rights, and in overruling his initial and renewed motions to discharge on constitutional speedy trial grounds.

### 3. NO ABUSE OF DISCRETION IN DENYING PARKS' MOTIONS FOR PERSONAL ACCESS TO DISCOVERY

Parks asserts that the district court erred in denying his motions for personal access to discovery materials. Parks claims that this denial violated his "statutory right to discovery," as well as his constitutional right to present a complete defense.[92] The State counters that Parks' statutory claims are

---

[91] See, e.g., *State v. Velasquez*, 384 Mont. 447, 377 P.3d 1235 (2016) (review must be confined to record made before district court at time of speedy trial hearing); *Ybarra v. State*, No. 14–02–00438–CR, 2003 WL 22097802 (Tex. App., Sept. 11, 2003) (memorandum opinion) (defendant did not raise argument that loss of videotape in time between indictment and trial impaired his defense, and, as such, argument was not considered on appeal).

[92] Brief for appellant at 42.

foreclosed under *State v. Figures*[93] and that his constitutional claims are without merit.

### (a) Statutory Right to Discovery

Parks' claim that his statutory right to discovery was violated by the denial of his motion for personal access to discovery is based on the provisions regarding "request[s] . . . to inspect and copy or photograph" set forth in Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2024). Section 29-1912 requires that courts reviewing requests under that section consider specific factors, including whether the request is material to the preparation of the defense. It also prescribes that whenever a court refuses to grant an order under the section, the court must "render its findings in writing together with the facts upon which the findings are based."[94] In addition, § 29-1912 establishes procedures whereby the State may show a court that an order under the section will result in "the possibility of bodily harm to witnesses or that witnesses will be coerced."[95] Parks claims that "none of these statutory mandated actions" occurred here.[96]

We agree with the State that Parks' arguments are foreclosed under *Figures*. In *Figures*, as in this case, an incarcerated defendant "requested copies of discovery that he could keep in his possession, instead of reviewing discovery with his attorney."[97] The district court overruled that request, and the defendant appealed. On appeal, we looked to the plain language of § 29-1912, which "'permit[s] the defendant to inspect and copy or photograph [discovery],' but does not mandate that the State provide physical copies of discovery for a defendant

---

[93] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[94] § 29-1912(3).

[95] § 29-1912(4).

[96] Brief for appellant at 41.

[97] *Figures, supra* note 93, 308 Neb. at 815, 957 N.W.2d at 178.

to possess while incarcerated."[98] As such, we concluded that the district court had not abused its discretion in overruling the defendant's request.

The same is true here. Section 29-1912 does not give Parks a statutory right to personal access to discovery. Additionally, because the court previously entered an order for statutory discovery, § 29-1912 did not impose an obligation upon the State and district court to articulate why Parks' motion for personal access to discovery should be denied.

### (b) Constitutional Right to Present Complete Defense

Parks also argues that denying him personal access to discovery violated his constitutional right to present a complete defense. Parks claims that he needed personal access to discovery materials because "only he, [as an] eyewitness to the events . . . , was in a position to extract details" from the surveillance videos and police body camera footage relevant to his defense that a third party shot Harbour and Hatten.[99] Parks also claims that if he had had personal access to the discovery materials, the error regarding when the video on Harbour's phone was "interacted with" would have been discovered sooner. Parks maintains this mistake was the "sole reason" that the defense elicited testimony about the murder of his son that Parks claims was not relevant and was prejudicial to him.[100]

[24,25] We have recognized that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete

---

[98] *Id*.

[99] Brief for appellant at 42.

[100] *Id*. at 43.

defense.[101] However, notwithstanding that right, we have also said that a defendant does not have an unfettered right to discovery.[102]

For example, in *State v. Henderson*,[103] we rejected the defendant's challenge to an order of the district court that kept him from accessing the police department's gang files. The defendant argued that the files were a "proper subject for discovery because they might contain information that would affect the outcome of the trial."[104] In particular, the defendant argued that information in the files "might" undermine the State's identification of an individual referred to as "JB" in a text message by showing that there were other individuals known as JB.[105] We disagreed.

We observed that if the defendant had wanted to present evidence that JB was someone other than the individual identified by the State, "there likely would have been other resources better familiar" with the meaning of "JB" in the text message.[106] We explained that, at most, the information sought by the defendant would have shown that other people were known as JB and might have been referred to in the text message. We also observed that even without access to the gang files, the defendant was able to argue that the State did not prove the person known as JB was the person the prosecution claimed and that the text message may have referred to someone else.

We relied on similar reasoning in *State v. Sellers*[107] in rejecting a defendant's challenge to a jury instruction stating

---

[101] *State v. Said*, 306 Neb. 314, 945 N.W.2d 152 (2020).

[102] *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014).

[103] *Id*.

[104] *Id*. at 296, 854 N.W.2d at 637.

[105] *Id*.

[106] *Id*. at 297, 854 N.W.2d at 638.

[107] *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

that evidence of marijuana and money located in a residence
was received only for the limited purpose of the victim's
credibility, and not for other purposes. The defendant claimed
that the instruction "negated the logical inference" that the
victim was a drug dealer, which the defendant claimed was
"relevant and consistent with" his testimony that he met the
victim to buy marijuana, and not to rob and kill him.[108] As
such, the defendant claimed that the instruction prejudiced his
ability to present a complete defense. We disagreed. We noted
that the instruction did not foreclose the defendant's ability to
argue that the victim was a drug dealer.[109] We also noted that
the defendant was permitted to question the victim about the
drugs and money found in the residence, that evidence of the
drugs and money was admissible for the purpose of determin-
ing who was truthfully describing the events in question, and
that the instruction did not preclude the jury from considering
the defendant's version of events.[110]

In the present case, the restriction on discovery of which
Parks complains did not preclude him from reviewing the
discovery materials with his counsel for indicia of a third-
party shooter or for potential issues related to the video on
Harbour's phone.

Also, like in *Henderson* and *Sellers*, the restriction did not
prevent Parks from arguing that someone else was the shooter
or from challenging the State's identification of him as the
shooter. Parks points to an OPD officer's testimony that there
were "a couple [of] suspicious parties" in the parking lot after
the shootings who refused to talk to police and "took off in
a hurry" whom police did not follow up on, with the appar-
ent implication that one of them could have been the shooter.
However, the jury heard that evidence, as well as other evi-
dence that raised questions about the identification of Parks

---

[108] *Id*. at 234, 777 N.W.2d at 791.

[109] *Id*.

[110] *Id*.

as the shooter. This included evidence that the surveillance videos did not capture the actual shootings, that the gun used in the shootings was not recovered, that there were several individuals seen leaving the hotel together with Parks in the hours before the shootings whom police never identified, and that an eyewitness saw a person in the parking lot around the time of the shootings whom Parks argued was inconsistent with descriptions of him.

As to the error regarding when the video on Harbour's phone was "interacted with," even if Parks had had personal access to discovery materials and spotted the error prior to trial, evidence of the murder of his son would still have been relevant at trial, for the reasons set forth below.

Finally, as to Parks' claim that defendants are denied personal access to discovery due to "a conspiracy between the Public Defender's Office, the State, and the court to deny [them] an ability to defend themselves,"[111] we reject that argument. Practices and policies like that described in Douglas County have been recognized to protect not only the State and its witnesses but also defendants. For example, copies of materials provided to defendants could be stolen by other inmates, who could then use the information contained in the materials to bolster false claims that the defendant confessed to them.[112]

## 4. No Abuse of Discretion in Denying Motion for Mistrial

Parks further claims that the district court erred in denying his motion for a mistrial based on the State's reference to the video on Harbour's phone in its opening statements and the

---

[111] Brief for appellant at 42.

[112] See, e.g., Jeff Welty, *New Ethics Opinion on Incarcerated Defendants' Right to Review Discovery*, North Carolina Criminal Law: A UNC School of Government Blog (Dec. 10, 2014), https://nccriminallaw.sog.unc.edu/new-ethics-opinion-on-incarcerated-defendants-right-to-review-discovery/ (last visited Aug. 27, 2025).

subsequent testimony from an OPD officer about the murder of Parks' son. Parks claims that this information was irrelevant and prejudicial to him because it suggested a motive for the shootings. The State, in turn, argues that its mistake about the time when the video on Harbour's phone was "interacted with" did not cause any prejudice to Parks, but instead "probably was actually beneficial to" him.[113] The State also argues that the evidence regarding the murder of Parks' son would have been admitted into evidence even without the error when the video on Harbour's phone was "interacted with."

[26,27] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[114] To prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[115] In the context of a denial of a motion for mistrial, actual prejudice means

> prejudice that is "'[e]xisting in fact; real.'" In defining the term, we have drawn on its meaning in similar legal contexts to determine that actual prejudice requires "a reasonable probability that, but for [the] errors, the result of the proceeding[s] would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[116]

[28] Turning first to counsel's reference to the video in the State's opening arguments, we agree with the State that Parks cannot show that he was actually prejudiced by that statement. Both parties appear to agree that the statement

---

[113] Brief for appellee at 27.

[114] *State v. Lenhart*, 317 Neb. 787, 11 N.W.3d 661 (2024).

[115] *Id*.

[116] *Id*. at 793, 11 N.W.3d at 667 (quoting *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006)).

was improper. As such, we assume without deciding that it was improper. However, the opening statements of counsel are not evidence, and the jury was instructed to this effect. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[117] Parks points to no such evidence here.

Moreover, within the context of the trial as a whole, the reference to the video on Harbour's phone in the State's opening arguments seems to have benefited Parks. As set forth in greater detail above, after opening arguments, the State discovered that the video was not "interacted with" until several hours after the murders, and it never offered the video into evidence. As a result, Parks was able to emphasize the State's failure to produce the video in his own closing arguments. In particular, Parks highlighted the State's failure to produce evidence that it had promised, evidence that he claimed the State would assuredly have "shov[ed] . . . in [the jury's] face" had it been available.

[29] As to the testimony by the OPD officer, we are not persuaded that this testimony was irrelevant, as Parks claims. To be relevant, evidence must be probative and material.[118] Evidence is probative if it has any tendency to make the existence of a fact more or less probable than it would be without the evidence.[119] A fact is material if it is of consequence to the determination of the case.[120] Given Lee's testimony, of which Parks does not complain on appeal, the evidence here meets that standard. Among other things, Lee testified that Parks was in Omaha on July 30, 2020, because his son had recently been murdered; that Parks and Harbour looked at "pictures" on Harbour's phone in the hotel room shortly before the shootings; and that Parks told her after the

---

[117] *State v. Barnes*, 317 Neb. 517, 10 N.W.3d 716 (2024).

[118] *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

[119] *Id*.

[120] *Id*.

shootings that he had spotted a "picture . . . of his son's dead body" on Harbour's phone and that he believed Harbour "had something to do with [his] son getting killed."

[30] The evidence of which Parks complains was prejudicial to him, as he argues. However, the fact that evidence is prejudicial is not enough to require exclusion under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party.[121] It is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under rule 403.[122] We see no such basis here.

As such, under the standard of review previously noted, the district court cannot be seen to have abused its discretion in overruling Parks' motion for a mistrial.

### 5. Ineffective Assistance of Counsel

Lastly, Parks assigns, restated and reordered, that his appointed and/or retained trial counsel were ineffective in (1) refusing to assert his statutory and constitutional rights to a speedy trial, (2) entering into an agreement with the State without his knowledge or consent that prohibited him from having "direct access" to discovery materials, (3) failing to withdraw the motions to depose, (4) failing to review the discovery, and (5) failing to petition for further review after the Court of Appeals affirmed the order of the district court overruling Parks' initial motion for absolute discharge.

[31,32] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred

---

[121] *State v. Moore*, 317 Neb. 493, 10 N.W.3d 531 (2024).

[122] *Id*.

in a subsequent postconviction proceeding.[123] However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[124] The determining factor is whether the record is sufficient to adequately review the issue under the standard of review previously noted.[125]

[33-36] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[126] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[127] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[128] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[129] A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome.[130] Courts may examine performance and prejudice in any order and need not examine both prongs if the defendant fails to demonstrate either.[131]

---

[123] *State v. Corral*, 318 Neb. 940, 20 N.W.3d 372 (2025).

[124] *Id.*

[125] *Id.*

[126] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[127] *Corral, supra* note 123.

[128] *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025).

[129] *Id.*

[130] See *id.*

[131] *Brown, supra* note 39.

### (a) Failure to Assert Statutory and
### Constitutional Rights to Speedy Trial

Parks' first claim of ineffective assistance of trial counsel concerns his appointed counsel's "fail[ure]" to assert his statutory and constitutional rights to a speedy trial. Parks argues that his appointed counsel was deficient in continuing multiple pretrial conferences "without [his] knowledge or consent, and against his expressly stated wishes," and in refusing to withdraw the motions to depose in the face of his "speedy trial objections."[132] Parks claims that he was prejudiced by this deficient performance because "witnesses and potential witnesses were subject to threats and coercion that effected [sic] their testimony or willingness to participate in [his] defense" and because he was "prevented . . . from achieving an absolute discharge based on a statutory violation of [his] speedy trial rights."[133] The State disagrees.

Turning first to the continuances, even assuming that Parks' appointed counsel was deficient in moving to continue without his consent,[134] his claim that counsel's conduct prevented him from achieving absolute discharge is too speculative to establish the prejudice required for an ineffective assistance of counsel claim. Parks' claim here essentially presumes that had his appointed counsel not moved to continue without his consent, the State would not have brought him to trial within the 6-month speedy trial deadline. However, there is no way to assess the accuracy of that presumption.

Parks' claim that appointed counsel's motions to continue impaired his defense is similarly without merit because it is conclusory. Parks asserts that various people, including Lee, were subject to threats, but he does not specify what their testimony would have been absent such threats, beyond noting that Lee would not have testified that he was the

---

[132] Brief for appellant at 47.

[133] *Id*. at 48.

[134] But see *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

shooter and that he told her Harbour had been involved in his son's murder.[135]

As to the motions to depose, Parks also cannot show that he was prejudiced by appointed counsel's failure to withdraw those motions. Parks' appointed counsel filed the motions to depose on November 29, 2021, and retained counsel entered his appearance on January 24, 2022. As such, there was a period of 56 days during which she was responsible for the handling of the motions to depose. However, there were more than 56 days remaining on Parks' speedy trial clock at the time of his initial motion to discharge on statutory speedy trial grounds.

### (b) Entering Into Agreement Prohibiting "Direct Access" to Discovery Materials

Parks' second assignment of ineffective assistance of trial counsel concerns the agreements that his appointed and retained counsel entered into without his consent that precluded him from having direct access to discovery materials. Parks claims that their performance in entering such agreements was deficient because it was inconsistent with their obligations as his agent. Parks also claims that it prejudiced his ability to defend himself. The State counters that even if Parks' counsel did perform deficiently, Parks cannot show he was prejudiced because it was the court's orders, and not counsels' agreements with the State, that kept him from getting personal access to discovery.

We agree with the State that Parks cannot show prejudice, although we rely on different reasoning. As discussed above, Parks' claim of prejudice is based on his view that if he had had personal access to discovery materials, he could have identified the actual shooter and prevented the introduction of evidence regarding his son's murder that he claims was not relevant and was prejudicial to him. However, those claims are without merit for the reasons set forth above.

---

[135] See, e.g., *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023); *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018).

(c) Failure to Withdraw Motions to Depose

Parks' third assignment of ineffective assistance of trial counsel concerns the failure to withdraw the motions to depose. Parks' assignment of error here references both his appointed and his retained counsel. However, in the body of his brief, Parks' arguments concern only his retained counsel. As such, our discussion here is limited to Parks' retained counsel,[136] although we note that Parks raised essentially the same argument regarding his appointed counsel in conjunction with his claim that she was ineffective in refusing to assert his speedy trial rights. Parks claims that had retained counsel not failed to finalize or withdraw the motions to depose, his "statutory speedy trial clock would indisputably have run before he was brought to trial."[137] The State counters that even if retained counsel's performance was deficient, Parks cannot show that he was prejudiced.

We agree with the State that Parks cannot show prejudice here. The record shows that Parks' retained counsel entered his appearance on January 24, 2022. Subsequently, starting on February 4, Parks' retained counsel requested continuances of the pretrial conference and of the trial that, collectively, totaled over 200 days. In other words, retained counsel's alleged failure to obtain a ruling or withdraw the motions to depose caused only a little over a week of delay prior to the initial motion to discharge that were not also attributable to retained counsel's motions to continue. Those 10 days of delay did not affect the rulings on Parks' initial or renewed motions to discharge.

As noted above, Parks takes the view that the district court's overruling of his renewed motion to discharge could be affirmed only if the 145 days of delay that passed between

---

[136] Goynes, supra note 128 (alleged errors of lower court must be both specifically assigned and specifically argued in brief of party asserting errors to be considered by appellate court).

[137] Brief for appellant at 49.

when the district court entered judgment on the mandate in the interlocutory appeal and the start of trial were attributed to him as a result of the unresolved motions to depose. However, Parks' renewed motion for discharge on statutory speedy trial grounds was properly overruled because Parks waived his statutory speedy trial rights before he renewed his motion to discharge. Seeking a ruling on the motions to depose or withdrawing them after the interlocutory appeal would have done nothing to change that outcome.

### (d) Failing to "Review Discovery"

Parks' fourth assignment of ineffective assistance of trial counsel is that his appointed and retained counsel were ineffective for "failing to review the discovery." However, Parks' argument is somewhat different. Specifically, Parks argues that "[n]either appointed nor trial counsel brought the videos in discovery to [the jail] to review with [him]."[138] Not reviewing discovery is not the same thing as not reviewing discovery with him, and under *State v. Mrza*,[139] we decline to view Parks' assignment of error regarding not reviewing discovery to encompass not reviewing discovery with him.

However, the result would be the same even if we were to reach the substance of Parks' claim. Parks claims that he was prejudiced by the failure to review the discovery with him because he could have detected the mistake regarding the time when the video on Harbour's phone was "interacted with," thereby preventing the introduction of evidence that he claims was not relevant and was prejudicial to him. That argument is without merit for the reasons set forth above.

---

[138] Brief for appellant at 50.

[139] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) (assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and appellate court will not scour remainder of brief in search of such specificity).

### (e) Failure to Petition for Further
### Review of Interlocutory Appeal

Finally, Parks assigns that his retained counsel was ineffective for failing to petition for further review after the Court of Appeals affirmed the order of the district court overruling his initial motion for absolute discharge on speedy trial grounds. But as the State notes, retained counsel filed a petition for further review that was denied by this court. Therefore, Parks' fifth claim of ineffective assistance of counsel is without merit.[140]

### VI. CONCLUSION

Parks' claims regarding his motions for absolute discharge, his motions to depose witnesses, his motions for personal access to discovery materials, and his motion for a mistrial are without merit. Parks' claims of ineffective assistance of appointed and retained trial counsel are also meritless. Accordingly, we affirm Parks' convictions.

Affirmed.

---

[140] See, e.g., *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).