Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/10/2025 09:09 AM CDT

State of Nebraska, appellee, v.
Ivell M. Hagens, appellant.

___ N.W.3d ___

Filed October 10, 2025.    No. S-24-612.

1. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Rules of Evidence: Hearsay: Appeal and Error.** Hearsay is not admissible except as provided by the Nebraska Evidence Rules. Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

4. **Appeal and Error.** In a de novo review, an appellate court reaches a conclusion independent of the trial court.

5. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

6. **Evidence: Words and Phrases.** Cumulative evidence means evidence tending to prove the same point to which other evidence has been offered.

7. **Trial: Convictions: Evidence: Appeal and Error.** Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.

8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

9. ____. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.

10. **Motions for Mistrial: Prosecuting Attorneys: Appeal and Error.** A party who fails to make a timely motion for mistrial based on prosecutorial misconduct forfeits the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.

11. **Trial: Prosecuting Attorneys: Appeal and Error.** When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, an appellate court will review the record only for plain error.

12. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

13. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

14. **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

15. **Sentences: Appeal and Error.** It is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose.

16. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

17. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.

18. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

19. **Effectiveness of Counsel: Proof.** Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

20. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

21. ____: ____. To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

22. **Effectiveness of Counsel: Words and Phrases.** A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome.

23. **Effectiveness of Counsel: Presumptions: Appeal and Error.** There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

24. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

25. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the issue.

26. ____: ____: ____. The record on appeal is sufficient to effectively review the question of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

27. **Effectiveness of Counsel: Appeal and Error.** Assignments of error
on direct appeal regarding ineffective assistance of trial coun-
sel must specifically allege deficient performance, and an appel-
late court will not scour the remainder of the brief in search of
such specificity.

Appeal from the District Court for Douglas County: J
Russell Derr, Judge. Affirmed.

Jason E. Troia, of Jason Troia Law, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne
for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and
Bergevin, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal from criminal convictions and sen-
tences, Ivell M. Hagens challenges the sufficiency of the
evidence, the overruling of his hearsay objections, alleged
prosecutorial misconduct, the excessiveness of his sentences,
and whether his trial counsel provided effective assistance.
We find the record insufficient to address two claims of
ineffective assistance of trial counsel. Otherwise, seeing no
merit to Hagens' assignments of error, we affirm the district
court's judgment.

## II. BACKGROUND

The State's amended information charged Hagens with first
degree sexual assault of a child, a Class IB felony[1]; incest
with a person under age 18, a Class IIA felony[2]; and tamper-
ing with physical evidence. The victim was Hagens' daughter,
J.C. The State alleged that the charges arose from an incident

---

[1] See Neb. Rev. Stat. § 28-319.01(1)(a) and (2) (Reissue 2016).

[2] See Neb. Rev. Stat. § 28-703 (Reissue 2016).

on April 27, 2023. Because Hagens was born in 1984 and J.C. was born in 2016, at the time of the crimes, Hagens was at least 19 years old and J.C. was under the age of 12.[3]

Hagens pled not guilty, and the case proceeded to a jury trial. We recite the evidence in the light most favorable to the State. Because Hagens was acquitted on the charge of tampering with evidence, we recite only the evidence relevant to the other charges. Additional background will be provided, as necessary, in the analysis section.

J.C. lived with her mother, Jasmine C., and Jasmine's other children. Hagens and his son, I.H., sometimes lived in Jasmine's home, and they were there during the days leading up to the incident.

In the early morning hours on April 27, 2023, Jasmine heard Hagens' exiting a bedroom that was used, at that time, by J.C. and her younger brothers, M.C. and I.H. Hagens walked from the children's bedroom into a nearby restroom and closed the door. At that point, Jasmine went into the children's bedroom and observed that J.C. was awake. Jasmine heard Hagens exit the restroom and go downstairs. Later that day, she asked J.C. and M.C. why Hagens was in their bedroom. She then asked a series of questions that led to J.C.'s initial disclosure.

When at trial the prosecutor asked Jasmine what J.C. told her about what had occurred, defense counsel raised hearsay objections, which the court overruled. Jasmine testified that J.C. said that Hagens touched her with "'[h]is fingers'" and "'[h]is mouth.'" Defense counsel requested the court to "admonish[]" the jury that the testimony could not be considered for its truth, but the court did not address that request.

Shortly after J.C.'s initial disclosure, Jasmine had a private conversation with J.C., who was then 6 years old. Jasmine asked her whether it hurt when Hagens touched her, and she

---

[3] See § 28-319.01(1)(a) (sexual assault of child in first degree where actor subjects person under 12 years of age to sexual penetration and actor is at least 19 years of age).

said that it did. Jasmine asked to "check [J.C.'s] private area" and observed that she "looked a little red down there."

Late that same day, Jasmine took J.C. to a hospital. Upon arriving, Jasmine met with a police officer and told him what had occurred. The police officer did not speak with J.C., but she was examined by a physician. Defense counsel objected when the prosecutor attempted to adduce testimony from both the police officer and the physician regarding whether J.C. had been sexually assaulted by Hagens on a separate occasion. The court sustained the objections before either witness could answer. Defense counsel did not request a curative instruction or move for a mistrial.

The next day, Jasmine took J.C. to a child advocacy center. There, J.C. was examined by a sexual assault nurse and met with a forensic interviewer. At trial, defense counsel pointed out inconsistencies in J.C.'s testimony. J.C. remembered telling the forensic interviewer that "'[she] th[ought she] was sleeping" at the time of the incident, "but [her] mom said [she] was awake.'" At trial, J.C. testified that she was asleep before Hagens came into the bedroom but that he woke her up by calling her name.

J.C. further testified that she remembered Hagens "taking off [her] onesie" and then "touch[ing her] private parts." She stated that she was in her bed when this occurred, it was dark outside, and her brothers were sleeping. When the prosecutor asked whether Hagens touched her on the outside or the inside of her body or both, J.C. responded, "Both." She indicated that the "tips of his finger[s]" were "[m]oving." J.C. demonstrated the movement for the jury by moving two of her fingers "back and forth." At trial, J.C. stated that she did not know whether Hagens used other parts of his body to touch her.

At the child advocacy center, a detective with the police department's child victim sexual assault unit met with Jasmine as part of his investigation. During the detective's cross-examination at trial, defense counsel asked about information

that was not included in his written report regarding that investigation. On redirect, the prosecutor asked questions regarding what the report did include, and defense counsel raised hearsay objections. The court overruled the objections. The detective testified regarding specific statements that Jasmine made to him and specific statements that J.C. made to Jasmine and to the forensic interviewer. Defense counsel did not request the court to instruct the jury that the out-of-court statements were not admitted for their truth.

After the State rested its case, the defense adduced expert testimony regarding the applicable protocol and guidelines for interviewing child witnesses. The expert did not offer an opinion regarding whether the protocol and guidelines were followed in this case. Hagens did not call other witnesses and waived his right to testify.

On rebuttal, the State adduced the testimony of the child advocacy center's senior director of children's services. She represented that in the course of her career, she had done more than 8,000 forensic interviews. After completing a peer review of J.C.'s interview in this case, she concluded that it was conducted according to protocol.

The jury found Hagens guilty of first degree sexual assault of a child and incest; it found him not guilty of tampering with physical evidence. The court accepted the verdict and convicted Hagens accordingly. It ordered a presentence investigation and appointed different counsel to represent Hagens at sentencing.

Following a hearing, the court sentenced Hagens to 40 to 50 years' imprisonment for the sexual assault conviction and to a consecutive term of 15 to 20 years' imprisonment for the incest conviction. It gave him credit for 451 days' time served on the sexual assault conviction.

Through his sentencing counsel, Hagens filed a timely appeal. We moved the appeal to our docket.[4]

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

### III. ASSIGNMENTS OF ERROR

Hagens assigns 11 errors, which we consolidate, restate, and reorder for ease of discussion. He assigns that (1) there was insufficient evidence to support his convictions, (2) the district court erred in overruling his hearsay objections to (a) Jasmine's testimony regarding J.C.'s statements and (b) the detective's testimony regarding statements made by J.C. and Jasmine, (3) the State committed prosecutorial misconduct by asking multiple witnesses questions pertaining to a separate incident of sexual assault, and (4) the district court imposed excessive sentences.

Hagens further assigns that he received ineffective assistance of counsel, when his trial counsel (1) waived the above hearsay objections, to any extent, by failing to object properly, request an appropriate instruction, or move for a mistrial; (2) failed to subpoena video footage from the relevant supplier in a timely fashion; (3) "failed to call his witnesses"; (4) "advised him not to testify"; and (5) failed to move for a mistrial and request a curative instruction in response to the prosecutor's questions regarding a separate incident of sexual assault and when Jasmine volunteered testimony on the same.

### IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[5] Additional standards are set forth in our analysis.

### V. ANALYSIS

#### 1. Evidence of Sexual Penetration
#### Was Sufficient

Focusing on one element, Hagens asserts that the evidence presented at trial was insufficient to support his convictions for first degree sexual assault of a child and incest.

---

[5] *State v. Dat*, 318 Neb. 311, 15 N.W.3d 410 (2025).

(a) Standard of Review

[2] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

(b) Application

Hagens contends that the State failed to meet its burden to prove he subjected J.C. to sexual penetration.

A statutory definition controls. Under the Nebraska Criminal Code,[7] "[s]exual penetration" is defined as

sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes. Sexual penetration shall not require emission of semen.[8]

This definition applies to both of Hagens' crimes.[9]

We conclude that the evidence, when viewed in the light most favorable to the State, was sufficient to support Hagens' convictions. J.C.'s testimony was direct evidence that Hagens subjected her to sexual penetration. She testified

---

[6] *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025).

[7] See Neb. Rev. Stat. § 28-101 (Cum. Supp. 2024) (identifying sections of Nebraska Criminal Code).

[8] Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2024).

[9] See §§ 28-318, 28-319.01, and 28-703(3)(a).

that after Hagens removed her pajamas, he "touched [her] private parts." When asked whether Hagens touched her on the inside of her body, she responded affirmatively.

J.C.'s testimony was corroborated by circumstantial evidence. Among other things, Jasmine testified that she heard Hagens exiting the children's bedroom at around 3 or 4 a.m.; that shortly thereafter, she observed J.C. was awake; and that later that day, J.C. disclosed the assault to her. Jasmine then examined J.C. and observed that she "looked a little red down there."

We read Hagens' argument to attack J.C.'s credibility as a witness and the weight of the State's other evidence. Hagens largely focuses on the "dynamic"[10] between J.C. and Jasmine. He claims that the disclosure was made in an "overly suggestive, coercive and threatening manner."[11] Essentially, he argues that J.C. was "so impressionable"[12] that she adopted a version of events suggested to her by Jasmine. Further, Hagens asserts that Jasmine's testimony was "unpersuasive"[13] and that law enforcement's investigation "failed to establish any probative evidence."[14]

To the extent that Hagens asks this court to pass on J.C.'s credibility and to reweigh the evidence, it is not within our purview to do so. Such matters were for the finder of fact.[15]

### 2. Because Hearsay Was Cumulative, Admission Was Harmless

Hagens next argues that the court erred in overruling his hearsay objections.

---

[10] Brief for appellant at 28.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 29.

[14] *Id*.

[15] See *State v. Perry, supra* note 6.

### (a) Standard of Review

[3,4] Hearsay is not admissible except as provided by the Nebraska Evidence Rules. Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[16] In a de novo review, an appellate court reaches a conclusion independent of the trial court.[17]

### (b) Application

[5] For purposes of resolving this assignment, we assume, without deciding, that the challenged statements were hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[18]

We first consider the objections to Jasmine's testimony. As noted above, defense counsel raised hearsay objections when the prosecutor asked what J.C. told Jasmine about what had occurred. After the court overruled the objections, Jasmine testified that J.C. said that Hagens touched her with "'[h]is fingers'" and "'[h]is mouth.'" Although defense counsel requested that the jury be "admonished" that the testimony could not be considered for the truth of the matter asserted, the court implicitly denied that request. Hagens asserts that the court erred both in admitting the evidence and in failing to provide a limiting instruction. We see no reversible error.

[6] The record shows that the admitted testimony was cumulative. Cumulative evidence means evidence tending to prove the same point to which other evidence has been

---

[16] *State v. Boswell*, 316 Neb. 542, 5 N.W.3d 747 (2024).

[17] *Id.*

[18] *State v. Sawyer*, 319 Neb. 435, 22 N.W.3d 650 (2025). Accord Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2024).

offered.[19] Here, the testimony regarding J.C.'s statements to Jasmine tended to prove the same point to which J.C.'s own testimony was offered: that Hagens subjected J.C. to sexual penetration.

[7] Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt.[20] Because we have already determined that there was other competent evidence to support Hagens' convictions, we conclude that any perceived error in admitting Jasmine's testimony was harmless.

We reach a similar conclusion regarding the detective's testimony. Hagens argues that this testimony was prejudicial because it included "[Jasmine's] version"[21] of a discussion between Jasmine and J.C., as well as statements made by J.C. during her interview and to Jasmine. Again, the admitted testimony was cumulative of other evidence. At this point in the trial, the jury had already heard Jasmine's testimony regarding her discussions with J.C., the forensic interviewer's testimony regarding her conversation with J.C., and J.C.'s own testimony about these events. Having reviewed de novo the court's ultimate determination to admit the evidence over Hagens' objections, we conclude that because it was cumulative, any perceived error in admitting it was harmless.

[8] The State suggests that this assignment fails on additional grounds, but we need not address them. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[22]

---

[19] *State v. Sawyer, supra* note 18.

[20] *Id.*

[21] Brief for appellant at 50.

[22] *State v. Lear*, 316 Neb. 14, 2 N.W.3d 632 (2024).

### 3. No Plain Error Regarding
### Prosecutor's Questions

Hagens contends that the State committed prosecutorial misconduct based on two allegedly improper questions asked during the State's case in chief. But he acknowledges that his trial counsel did not move for a mistrial on that basis. This affects our standard of review.

### (a) Standard of Review

If Hagens' trial counsel had moved for a mistrial and suffered the denial of such motion, we would apply the standard of review applicable to such a denial.[23] Anticipating this problem, Hagens urges that we review his claim of prosecutorial misconduct for plain error.

[9] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.[24]

[10,11] In our recent cases, "'we have actually treated a defendant's failure to move for a mistrial on the basis of alleged prosecutorial misconduct more like a forfeiture by conducting a plain error review in such circumstances.'"[25] Consistent with that language, we now articulate this principle: A party who fails to make a timely motion for mistrial based on prosecutorial misconduct forfeits the right to assert on appeal that the court erred in not declaring a mistrial

---

[23] See *State v. Parks*, 319 Neb. 773, ___ N.W.3d ___ (2025) (decision whether to grant motion for mistrial is within trial court's discretion and will not be disturbed on appeal in absence of abuse of discretion).

[24] *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

[25] *State v. Barnes*, 317 Neb. 517, 544, 10 N.W.3d 716, 739 (2024) (quoting *State v. Gleaton*, 316 Neb. 114, 3 N.W.3d 334 (2024)).

due to such prosecutorial misconduct.[26] When a defendant has not preserved a claim of prosecutorial misconduct for direct appeal, an appellate court will review the record only for plain error.[27] To the extent that this court's prior opinions[28] and the lower court opinions relying on them[29] fail to use the language of forfeiture rather than waiver, we disapprove them.

With that refinement, we settle the standard of review applicable to this assignment. We review the record only for plain error.

### (b) Application

As set forth in the background, the prosecutor attempted to adduce testimony from two witnesses regarding whether J.C. had been sexually assaulted by Hagens on a separate occasion. The prosecutor's questions form the basis for Hagens' claim of prosecutorial misconduct.

---

[26] See *State v. Gleaton, supra* note 25.

[27] *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

[28] See, *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020); *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019); *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018); *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016); *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015); *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015); *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010); *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999); *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997).

[29] See, *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024); *State v. Howard*, 26 Neb. App. 628, 921 N.W.2d 869 (2018); *State v. Kays*, 21 Neb. App. 376, 838 N.W.2d 366 (2013), *disapproved on other grounds, State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014); *State v. Balvin*, 18 Neb. App. 690, 791 N.W.2d 352 (2010); *State v. SapaNajin*, 11 Neb. App. 190, 646 N.W.2d 668 (2002).

When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.[30] If the appellate court concludes that a prosecutor's acts were misconduct, the court next considers whether the misconduct prejudiced the defendant's right to a fair trial.[31] Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infects the trial that the resulting conviction violates due process.[32]

Hagens argues that the prosecutor's questions were improper, because they attempted to introduce evidence that first needed to be evaluated outside the presence of the jury. In support, he points to two rules of evidence: Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Cum. Supp. 2024), and Neb. Evid. R. 414, Neb. Rev. Stat. § 27-414 (Reissue 2016). These rules, respectively, set forth requirements pertaining to evidence of "other crimes, wrongs, or acts"[33] of the accused and, in criminal cases involving charges of sexual assault, evidence of the "accused's commission of another offense or offenses of sexual assault."[34] Under both rules, the State has the burden to prove by clear and convincing evidence, outside the presence of any jury, that the accused committed such crime, wrong, act, or other sexual assault offense before such evidence is admissible.[35]

The record supports Hagens' argument that the statutory procedures were not employed. Had the prosecutor done so and addressed the evidence in a hearing outside the presence of the jury, the series of events could have been avoided.

But here, the question is whether there is plain error on the record. We see none.

---

[30] *State v. Barnes, supra* note 25.

[31] *Id.*

[32] *Id.*

[33] § 27-404(2) and (3).

[34] § 27-414(1) and (3).

[35] See §§ 27-404(3) and 27-414(1) and (3).

We need not decide whether the prosecutor's questions constituted misconduct, because even if they did, there was no miscarriage of justice on this record. Defense counsel timely objected to the two questions. The court sustained both objections before the witnesses could answer. The jury instructions tendered at the close of trial stated that counsel's questions are not evidence. They further stated that the jury must not speculate as to possible answers to questions the court did not permit to be answered. Additionally, the instructions directed the jury not to interpret any of the court's rulings as reflecting an opinion as to how the case should be decided. It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.[36] In these circumstances, the two questions did not rise to the level of plain error.

We express no opinion whether the outcome might have been different had proper motions been made to preserve the issue.

### 4. No Abuse of Discretion in Sentences

Hagens contends that the district court abused its discretion in imposing excessive sentences.

### (a) Standard of Review

[12,13] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[37] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[38]

---

[36] *State v. Lenhart*, 317 Neb. 787, 11 N.W.3d 661 (2024).

[37] *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025).

[38] *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

### (b) Application

Hagens does not contest that his sentences were within the statutory limits. Instead, he argues that the court abused its discretion by "placing him in the category of warranting an upper-end sentence."[39] He asserts that he was "sentenced the same" as individuals convicted of committing similar criminal acts "on a biweekly or more basis for years with various forms of penetration."[40] Hagens also argues, in essence, that the court placed too much weight on his prior criminal history and not enough weight on his favorable character references.

[14] Because the sentences imposed were within the statutory limits, we must determine whether the court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[41] The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[42]

Contrary to Hagens' argument, the appellate record shows that the court based his sentences on the facts and circumstances surrounding his life and not on its placing him into a particular "category" of offenders. Nothing in the record shows that the court failed to consider the evidence offered by Hagens or that it made its decision based on improper considerations.

In pronouncing the sentences, the court emphasized there were "many factors" to consider. It stated that it had considered the evidence from trial and the presentence investigation report, which revealed, among other things, that Hagens

---

[39] Brief for appellant at 32.

[40] *Id.* at 30.

[41] See *State v. Sutton, supra* note 38.

[42] *State v. Lara*, 315 Neb. 856, 2 N.W.3d 1 (2024).

had an extensive criminal history. It remarked that the jury had found Hagens guilty of a "fairly egregious offense here." We cannot conclude that the court made its decision based upon reasons that were untenable or unreasonable or that its action was clearly against justice or conscience, reason, and evidence. The court did not abuse its discretion.

[15] Although Hagens seemingly asks us to reweigh the relevant factors, it is not the proper function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose.[43] Moreover, we are mindful that "the district court was under no obligation to conduct a comparative analysis of 'similar' cases—an inquiry that would be entirely impractical for trial courts to undertake."[44] This assignment lacks merit.

### 5. Ineffective Assistance of Trial Counsel

[16] Hagens argues that he received ineffective assistance of trial counsel in multiple respects. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.[45] Here, Hagens' appellate counsel was required to raise such claims regarding his predecessor counsel below.

Before addressing Hagens' specific claims, we set forth the applicable legal principles. As discussed below, two of his claims fail because the record on appeal conclusively shows that Hagens will not be able to establish prejudice. One fails because it is insufficiently assigned. The record is insufficient to resolve the remaining claims.

---

[43] *Id.*

[44] *State v. Morton*, 310 Neb. 355, 372, 966 N.W.2d 57, 70 (2021).

[45] *State v. Parks, supra* note 23.

### (a) Standard of Review

[17,18] Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law.[46] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[47]

### (b) Legal Principles

[19-22] Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[48] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[49] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[50] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[51] A reasonable probability of prejudice from ineffective assistance of counsel is a probability sufficient to undermine confidence in the outcome.[52]

---

[46] *Id.*

[47] *Id.*

[48] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[49] *State v. Parks, supra* note 23.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[23] There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.[53]

[24] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[54]

[25,26] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the issue.[55] The record on appeal is sufficient to effectively review the question of ineffective assistance if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.[56]

### (c) Claims Assigned

#### (i) Failure to Preserve Hearsay Objections

Hagens claims that trial counsel was ineffective in not preserving the above hearsay objections, to any extent, by failing to object properly, request an appropriate instruction, or move for a mistrial. We have already concluded that the admission of the hearsay evidence was, at most, harmless error. It necessarily follows that Hagens cannot demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. In other words, he cannot show prejudice. This assignment fails.

---

[53] *State v. Vazquez*, 319 Neb. 192, 21 N.W.3d 615 (2025).

[54] *State v. Sawyer, supra* note 18.

[55] *State v. Parks, supra* note 23.

[56] *State v. Sawyer, supra* note 18.

*(ii) Failure to Timely Subpoena Video Footage*

a. Additional Background

We learn from the bill of exceptions that Hagens intended to offer as evidence video footage from cameras located in Jasmine's home at the time of the incident. The record includes correspondence from the supplier stating that it has a "60-day retention period" for all video and photographic content. Defense counsel attempted to subpoena the video footage outside that period. At trial, Jasmine testified that although she had cameras in the home, they were not turned on when the assault occurred.

b. Application

Hagens asserts that his trial counsel was ineffective in failing to subpoena the video footage from the supplier in a timely fashion. We agree with the State that Hagens cannot show prejudice.

The undisputed facts in the record establish that the supplier retains video content for 60 days. Outside that period, all content is "automatically deleted" and "cannot be retrieved or restored." Regardless, there was uncontroverted testimony that the cameras in the home were not on at the time of the assault.

Because the 60-day retention period passed long ago, there is no way for Hagens to obtain the evidence, if it ever existed. Without it, Hagens cannot demonstrate a reasonable probability that but for his counsel's alleged deficient performance, the result of the proceeding would have been different.

*(iii) Failure to Call Witnesses*

[27] We do not address Hagens' assignment of error that he "received ineffective assistance of counsel when his counsel failed to call his witnesses." This assignment lacks the specificity we demand on direct appeal. We have repeatedly said that assignments of error on direct appeal

regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[57]

### (iv) Advising Not to Testify

#### a. Additional Background

Outside the presence of the jury, the judge, and the prosecutor, the following exchange took place on the record:

> [Defense counsel]: . . . We have discussed with . . . Hagens his right to remain silent and his right to testify at trial in his defense. After discussion and weighing of the benefits, he is choosing today to not testify.
>
> Is that correct?
>
> [Hagens]: Correct.
>
> [Defense counsel]: Is there anything you want to add?
>
> [Hagens]: No.
>
> [Defense counsel]: Okay. We also have to inform the [j]udge of your waiver. Okay?
>
> [Defense counsel]: Okay. That's it. Thanks.

At this point, there was a discussion off the record. Then, the following exchange took place:

> THE COURT: We're outside the presence of the jury. Counsel is present. [Hagens] is present.
>
> I know you have made a record, but just formally tell the [c]ourt whether [Hagens] chooses to testify.
>
> [Defense counsel]: [Hagens] has chosen to waive his right to testify.
>
> THE COURT: Is that correct, sir?
>
> [Hagens]: Yes.
>
> THE COURT: All right. Very good.

---

[57] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

b. Application

Hagens assigns that he received ineffective assistance of counsel when his counsel "advised him not to testify." There may be perceived similarities between this assignment and one we recently declined to address in another case,[58] but here, the assignment is sufficiently specific. It addresses a specific issue that does not require additional information to understand precisely what the assignment attacks: Hagens challenges his counsel's advice not to testify. The record does not set forth any details regarding the advice on this issue given to Hagens by his trial counsel.

A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.[59] Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.[60] Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.[61]

The State concedes that the record on appeal does not contain evidence necessary to the determination of this claim, including the extent and content of any discussions between Hagens and trial counsel. The record reflects that the court asked Hagens whether his trial counsel was correct that he had chosen to waive his right to testify, and he responded, "Yes." But the record reveals nothing of Hagens' attorney's

---

[58] See *id.*

[59] *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

[60] *Id.*

[61] *Id.*

discussion with him on this matter. We agree that the record is insufficient to resolve this claim on direct appeal.

### (v) Failure to Move for Mistrial and Request Curative Instruction

#### a. Additional Background

At three points during the State's case in chief, there were mentions of a separate incident. As noted above, the prosecutor asked two witnesses—the police officer and the physician—questions regarding whether J.C. had been sexually assaulted by Hagens on a separate occasion. Counsel objected but did not move for a mistrial based on the questions and did not request a curative instruction.

The third mention was volunteered by Jasmine on direct examination. As part of establishing the series of events at the child advocacy center, the prosecutor asked, "[W]hat was the next thing that happened after that?" Jasmine answered, "Well, before I seen [J.C.], they called me into a room, sat me down. I believe they asked me a couple questions. The detective got some information. *They did tell me that* [*J.C.*] *revealed that it had happened one time before.*" (Emphasis supplied.) Defense counsel objected, and the court sustained the objection. Again, defense counsel did not request a curative instruction and did not move for a mistrial. From there, the prosecutor resumed questioning.

#### b. Application

Hagens argues that his trial counsel was ineffective in failing to move for a mistrial and request a curative instruction in response to the prosecutor's two questions and the testimony volunteered by Jasmine. He asserts that his counsel was aware "you could not un[]ring the bell."[62] He contends that such failures, occurring in all three instances, constituted deficient performance and were sufficient to undermine

---

[62] Brief for appellant at 38.

confidence in the outcome. The State doubts whether Hagens' counsel could have prevailed on a motion for mistrial, but it asserts that this claim requires an evaluation of trial strategy and matters not contained in the record.

The following principles are relevant: A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[63] To prove error predicated on the failure to grant a mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[64] Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.[65]

We conclude that the record is insufficient to resolve Hagens' claim. The record shows that the jury heard three mentions of a separate incident of sexual assault involving Hagens and J.C. Defense counsel objected in all instances, but the pertinent questions and testimony were not stricken from the record and the jury was not admonished or instructed to disregard them. Days passed before the court tendered the jury instructions. Because of the absence of a motion for mistrial, our review of the claim of prosecutorial misconduct was limited to an examination for plain error.

But the record does not permit us to assess what defense counsel's strategy may have been. As noted above, we would apply a strong presumption that counsel acted reasonably and would not second-guess counsel's reasonable strategic decisions.

---

[63] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

[64] *State v. Ramos*, 319 Neb. 511, 23 N.W.3d 640 (2025).

[65] *State v. Lenhart, supra* note 36.

In light of these circumstances, and given the nature of Hagens' charges, we cannot say that the record conclusively shows Hagens' counsel's performance was not deficient or that he was not prejudiced by the alleged deficient performance.

## VI. CONCLUSION

As set forth above, we have refined the rule of law regarding the effect of a failure to move for a mistrial regarding purported prosecutorial misconduct to employ the language of forfeiture rather than waiver.

The appellate record is insufficient to address two ineffective assistance of trial counsel claims. Otherwise, seeing no merit to Hagens' arguments, we affirm the district court's judgment.

AFFIRMED.

FREUDENBERG, J., not participating.

BERGEVIN, J., concurring.

I join the opinion of the court in full. However, I write separately to emphasize the importance of not inquiring into evidence of other acts until the trial court has determined the admissibility of that evidence.

Hagens argues that the State committed prosecutorial misconduct when it asked questions that suggested inadmissible evidence to the jury after it failed to address the evidence in a hearing outside the presence of the jury. But the State argues that no misconduct occurred because the evidence was admissible as "inextricably intertwined evidence."[1]

---

[1] See, e.g., *State v. Lee*, 304 Neb. 252, 271, 934 N.W.2d 145, 160 (2019) ("[i]nextricably intertwined evidence includes evidence that forms part of the factual setting of the crime, is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or is necessary for the prosecution to present a coherent picture of the charged crime").

The Nebraska Evidence Rules render all propensity evidence inadmissible, subject to specific exceptions[2] and procedural requirements.[3] This court has held that rule 404(1) does not apply if the evidence is "inextricably intertwined" with the charged crime.[4] Consequently, the first inquiry concerning evidence that gives rise to a propensity inference is whether the evidence is, in fact, rule 404 evidence.[5]

To that end, whenever the State intends to offer evidence of other acts by the defendant that the State views as "inextricably intertwined" with the charged offenses, the best practice is for the State to first raise the evidence outside the presence of the jury and obtain a ruling on its admissibility. Doing so is certainly practicable,[6] and there was no reason not to do so here.

---

[2] See, Neb. Evid. R. 404(1)(a) to (c) and (2), Neb. Rev. Stat. § 27-404(1)(a) to (c) and (2) (Cum. Supp. 2024); Neb. Evid. R. 414(1), Neb. Rev. Stat. § 27-414(1) (Reissue 2016).

[3] See §§ 27-404(3) and (4) and 27-414. See, also, *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025) (discussing evidence of other sexual assaults under § 27-414); *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023) (discussing evidence of other acts under § 27-404).

[4] See, e.g., *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023), *cert. denied* ___ U.S. ___, 144 S. Ct. 1073, 218 L. Ed. 2d 249 (2024); *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019); *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004). See, also, *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002); *State v. Canbaz*, 259 Neb. 583, 611 N.W.2d 395 (2000).

[5] See *State v. Aguilar*, 264 Neb. 899, 652 N.W.2d 894 (2002).

[6] See Neb. Rev. Stat. § 27-103(3) (Reissue 2016) ("proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, [including] asking questions in the hearing of the jury"). See, also, *State v. Houser*, 241 Neb. 525, 490 N.W.2d 168 (1992) (failure to conduct proper hearing may be basis for reversal). Cf. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998).