IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PINEDA-PAZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

HERMES J. PINEDA-PAZ, APPELLANT.

Filed February 24, 2026.    No. A-25-497.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Robert W. Alexander, of Dowding, Dowding & Dowding, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Hermes J. Pineda-Paz pled guilty to attempted first degree murder and attempted use of a deadly weapon to commit a felony. The Hall County District Court sentenced him to concurrent terms of incarceration. Pineda-Paz appeals, claiming that the district court imposed an excessive sentence and that his trial counsel was ineffective. We affirm.

## BACKGROUND

On January 18, 2019, the State filed an information charging Pineda-Paz with four counts: count I, attempted first degree murder, a Class II felony, pursuant to Neb. Rev. Stat. §§ 28-201 and 28-303 (Reissue 2016); count III, first degree assault, a Class II felony, pursuant to Neb. Rev. Stat. § 28-308 (Reissue 2016); and counts II and IV, use of a deadly weapon to commit a felony, a Class II felony, pursuant to Neb. Rev. Stat. § 28-1205 (Reissue 2016).

- 1 -

On November 21, 2019, a plea hearing was held. Pineda-Paz appeared with counsel and was aided by a certified court interpreter. Pursuant to a plea agreement, the State amended the information by interlineation (later filed November 22), reducing the charge in count II to attempted use of a deadly weapon to commit a felony, a Class IIA felony, pursuant to §§ 28-201 and 28-1205. Pineda-Paz then pled guilty to count I (attempted first degree murder) and count II (attempted use of a deadly weapon to commit a felony), and the State moved to dismiss the remaining counts. The State provided the following factual basis for the plea:

On October 6, 2018, officers with the Grand Island Police Department were dispatched to a residence located in Grand Island, Hall County, Nebraska. Officers arrived at that location and observed the defendant, Hermes Pineda-Paz. At some point they determined that he was 17 years of age.

As the officers approached him, Mr. Pineda-Paz said, "I just killed someone. Take me to jail."

Officers entered the residence and observed the victim, Jorge Castaneda Ordones, lying down. They observed that he had several large deep lacerations on his head and face. The lacerations were deep enough that the brain matter was exposed. He was bleeding profusely. The officers noted that he was still alive. Mr. Castaneda was transported to the hospital. Medical professionals performed a craniotomy. They also indicated Mr. Castaneda had an orbital fracture, and they also noted five deep lacerations on his head and face.

[Pineda-Paz'] mother was present. She told the officers that her son, . . . Pineda-Paz, had called her when she was out of the home and told her that he had killed Jorge, that he had killed him and stabbed him. She called several people, which led to the police arriving at the residence along with herself.

She also advised the officers there had been an incident about a week earlier where she'd encountered her son, [Pineda-Paz], with a knife, and [he] indicated that he wanted to kill Jorge. She told the officers she had calmed him down on that date. Officers also were able to recover two machetes at the residence, one of which had been used to strike the victim in this case.

All those events occurred in Hall County, Nebraska, on that date.

The district court accepted Pineda-Paz' plea and found him guilty of count I (attempted first degree murder) and count II (attempted use of a deadly weapon to commit a felony). The court dismissed, with prejudice, the remaining counts, and the case was set for sentencing.

At the sentencing hearing on January 27, 2020, the district court sentenced Pineda-Paz to concurrent sentences of 36 to 40 years' imprisonment for attempted first degree murder, and 10 to 12 years' imprisonment for attempted use of a deadly weapon to commit a felony. He was given 479 days' credit for time already served. No direct appeal was filed at that time.

In 2022, Pineda-Paz filed a pro se motion for postconviction relief. The motion for postconviction relief was subsequently amended after current counsel was appointed to represent Pineda-Paz. After an evidentiary hearing in March 2025, the district court entered an order on June 6, 2025, granting Pineda-Paz' amended motion for postconviction relief, in part. The court found that Pineda-Paz' trial counsel was ineffective for failing to file a direct appeal, and it restored his

right to direct appeal. The court ordered that current counsel would remain as court-appointed counsel for the pendency of Pineda-Paz' direct appeal. The court stated it was not considering the remaining claims in the amended motion for postconviction relief and was "essentially dismissing the remaining claims at this time."

Pineda-Paz timely filed this new direct appeal.

## ASSIGNMENTS OF ERROR

Pineda-Paz assigns that (1) his sentence was excessive, and (2) his "Sixth Amendment rights were violated because he did not receive effective assistance of counsel."

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### EXCESSIVE SENTENCE

Pineda-Paz was convicted of one count of attempted first degree murder, a Class II felony, punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). He was sentenced to 36 to 40 years' imprisonment. Pineda-Paz was also convicted of one count of attempted use of a deadly weapon to commit a felony, a Class IIA felony, punishable by up to 20 years' imprisonment. See § 28-105. He was sentenced to 10 to 12 years' imprisonment. His sentences were within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion. See *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025) (where a sentence imposed within statutory limits is alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining sentence to be imposed.)

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Pineda-Paz committed the current offense 1½ months before he turned 18 years old, and he was 19 years old at the time of sentencing. According to the presentence investigation report

(PSR), he grew up in Honduras and came to the United States as a teenager. He had completed the 11th grade, and he was a senior in high school at the time of this offense. Pineda-Paz was living with his mother and his siblings at the time of his arrest. He described his mother as "a hard-working woman who worked a lot to provide for her children," but he "acknowledge[d] her need to work so many hours left him and his siblings unattended frequently."

Pineda-Paz' "time and attention were consumed with substance abuse" in the time leading up to his arrest. The victim in this case had been staying at Pineda-Paz' home. According to police reports in the PSR, Pineda-Paz' mother said that the victim was her niece's boyfriend, and he needed a place to stay (her niece lived in Honduras). Pineda-Paz' mother also said that Pineda-Paz told her that the victim would not "leave [him] alone or give [him] space."

Pineda-Paz reported that he had one prior offense, driving during suspension, for which he received a fine. However, the probation officer could not find evidence of that offense in his record. The probation officer noted that the current offense was all that appeared in Pineda-Paz' record. However, "[h]e has had reasonably extensive incidents reported [in jail] that included destruction of jail property, spitting at officers, harm to self, and conflict with other inmates."

As part of the presentence investigation, a "Level of Service/Case Management Inventory" (LS/CMI) was conducted, and Pineda-Paz was assessed at an overall "[h]igh" risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domain for alcohol/drug problem. He scored in the "[h]igh" risk range in the domains for leisure/recreation, companions, and procriminal attitude/orientation. He scored in the "[m]edium" risk range in the domains for education/employment, family/marital, and antisocial pattern. And he scored in the "[v]ery [l]ow" risk range in the domain for criminal history.

At the sentencing hearing, Pineda-Paz' counsel stated that "at the time of this occurrence," Pineda-Paz was "a minor and was dealing with identification issues, not only because he was an immigrant here learning English," but he "was dealing with his sexuality as well." "I believe the police reports say they'd been watching gang videos from Honduras on YouTube, gang videos of how they treat homosexuals in prison," and "[m]y client snapped." Pineda-Paz "made a very irrational decision that day." Counsel argued that Pineda-Paz "had no violence in his record," "[b]ut what he has had is a hard time admitting his sexuality in a community where, honestly, it's not as accepting" and "he was scared." Counsel stated, "[Pineda-Paz] conveyed with me that he was . . . remorseful" and "to tell the Court and to tell [the victim] how sorry he is for what happened and the pain that he's caused his family." Counsel requested that Pineda-Paz' sentences run concurrently.

Pineda-Paz personally stated, "I'm sorry for what I did."

The State argued that Pineda-Paz "struck the victim in the head multiple times with a machete causing massive injuries to his skull and brain." "There was also information unraveled during the investigation that [Pineda-Paz] had come to his mother's room and had told her about a week before the incident that he was going to stab the victim and kill the victim," but the mother "indicated that she was able to calm [Pineda-Paz] down, and nothing happened on that particular date." On the date of the machete incident, "when the police arrived [Pineda-Paz] told them he'd just killed someone, so at that point he thought he'd actually murdered the victim in this case"; officers "indicated [Pineda-Paz] was calm, collected, didn't appear to have any signs of concern or remorse, and was unfazed." The victim "suffered a serious brain injury" and "[h]e's no longer

able to care for himself"--he cannot walk, requires assistance with daily activities, and has problems with his memory. The victim was still receiving ongoing medical care and there are potential additional surgeries. "He's extremely lucky to be alive." The State was concerned about "why this happened," and it said that "the only thing [it] could derive from reading all of the police reports and the presentence investigation material was that the victim was bothering him." After going through the criminogenic risk factor domains in the PSR, the State asked the district court to consider imposing consecutive sentences.

The district court went through the various sentencing factors. The court stated that in reviewing the PSR, it was able to read the police reports, see pictures of the scene, and see the picture of "the violent injuries that were inflicted" on the victim. The court also stated that it had reviewed the letters sent by Pineda-Paz' family and friends. The court said that "this was a violent crime" and Pineda-Paz' "actions were not provoked by the victim"; "[t]here is no reason to excuse or justify this offense." It then sentenced Pineda-Paz as set forth previously.

On appeal, Pineda-Paz contends, "The sentence, although within the statutorily authorized range, nonetheless constituted an abuse of discretion by the District Court because it failed to properly balance the relevant sentencing factors." Brief for appellant at 9. He argues that "almost every individual criteria weighed in favor of mitigation." *Id.* at 10. In particular, he notes his young age (and the relative lack of brain development among teenagers), personal hardships, and that the victim had allegedly "threatened to commit violent acts against him [and] his mom failed to help him." *Id.* at 13. The State contends that the district court relied on the appropriate sentencing factors and the PSR. It argues that Pineda-Paz essentially invites this court "to substitute its judgment of an appropriate sentence for that of the district court." Brief for appellee at 9.

Pineda-Paz' sentences are within the statutory range, and we cannot say that the district court abused its discretion in the sentences imposed. See *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024) (no abuse of discretion in sentence imposed when review of record shows sentencing court considered relevant sentencing factors and did not consider any inappropriate factors).

INEFFECTIVE ASSISTANCE OF COUNSEL

Pineda-Paz' appellate counsel is different from his trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). On direct appeal in a criminal case, claims of ineffective assistance of counsel must be both specifically assigned and specifically argued in the appellant's brief. *Id.*

Pineda-Paz assigns as error that his "Sixth Amendment rights were violated because he did not receive effective assistance of counsel." Brief for appellant at 5. He argues but did not specifically assign that trial counsel was ineffective because counsel failed to investigate and advise him (1) on a self-defense claim and (2) "of a possible insanity defense adequately and to get an evaluation conducted." *Id.* at 16. He also argues but did not specifically assign that trial counsel's representation of him "violated Neb. Rev. Ct. R. of Prof. Cond. § 3-501.8(f)" (conflict of interest; compensation for representing a client). Brief for appellant at 18.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege the conduct that is claimed to constitute deficient performance. *State v. Kruger, supra*. A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Id.* An assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. *Id.* See, also, *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019) (holding that "assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity"), *disapproved on other grounds, State v. Hagens,* 320 Neb. 65, 26 N.W.3d 174 (2025).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Pineda-Paz' assignment of error only generally alleged that "he did not receive effective assistance of counsel." Brief for appellant at 5. There is no specific allegation of deficient performance set forth in the assigned error. Therefore, even though Pineda-Paz more particularly describes the alleged deficiencies in the argument section of his brief, his failure to allege such deficiencies in the "Assignments of Error" section of his brief does not meet the requirement established by *Mrza, supra*.

Pineda-Paz suggests that based on past Nebraska Supreme Court cases, the "appellate courts prioritize substance and clarity over rigid formalism," reply brief for appellant at 11, and that *Mrza, supra*, "established the specificity rule to address ambiguity -- not to punish clarity." Reply brief for appellant at 8. Although we understand Pineda-Paz' frustration on this issue, we do not read *Mrza, supra*, to allow us the flexibility he seeks. We therefore do not consider his assignment of error alleging ineffective assistance of trial counsel. See, *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025) (assignment of error must, standing alone, permit appellate court to determine if claim can be decided upon trial record and also permit district court to later recognize that claim was raised on direct appeal; this requires description of specific conduct alleged to constitute deficient performance); *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (ineffective assistance of counsel claim not considered when assigned error did not specify counsel's deficient performance, even though argument section of brief discussed claims in detail), *disapproved on other grounds, State v. Hagens, supra*.

CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in sentencing Pineda-Paz.

AFFIRMED.